OPINION OF THE COURT

Per Curiam.

Final judgment entered November 28, 1980 is affirmed, with $25 costs.
Landlord Jeanne Short owns 520 East 85th Street, New York City, a five-floor building containing eight apartments. Mrs. Short occupies the entire second floor of the building, and the apartment at issue is apartment 1-W, located on the first floor. It was stipulated between the parties that the landlord did not at any time offer the tenant of apartment 1-W a renewal lease, and that on June 12,1980, 60 days before the expiration date of that tenant’s lease, the landlord advised the tenant that her lease would *673 not be renewed because the landlord wished to have that apartment for her mother.
The landlord’s mother was, at the time of the trial, 87 years of age, in poor health, and living alone. The only witnesses called by the landlord were the landlord herself and the landlord’s mother. The tenant did not testify and called no witnesses.
The court below in awarding judgment to the tenant found that while the landlord established a good faith intention to place her mother in apartment 1-W (Code of Real Estate Industry Stabilization Association of New York City, Inc. [Rent Stabilization Code], §54, subd [b]) she failed to establish having such an intent during the critical period between 150 and 120 days before the expiration of tenant’s lease.
Subdivision (b) of section 54 of the Rent Stabilization Code provides in essence that a landlord need not renew a lease for a rent-stabilized apartment, where the owner wishes to utilize the apartment, for himself or for a member of his immediate family. Section 60 of the Rent Stabilization Code governs the time within which a landlord of rent-stabilized premises must provide tenants with notices for renewal of leases. That section specifically provides: “Every owner shall notify the tenant in occupancy not more than 150 and not less than 120 days prior to the end of the tenant’s lease term, by mail, of such termination and offer to renew the lease at a rent not in excess of the stabilization rent permitted for each renewal lease and otherwise on the same conditions as the expiring lease, and shall give such tenant a period of 60 days to renew such lease and accept the offer”.
Significantly there is no requirement in section 60 that a landlord notify the tenant — within the specified 150- to 120-day period before the expiration of the lease — that the landlord intends not to renew the tenant’s lease in accordance with one of the exceptions of section 54. Predictably situations arise where a landlord neither proffers a notice for renewal within the 150- to 120-day period prior to the expiration of tenant’s lease nor advises tenant within that time frame of an intention not to offer a renewal lease. If at *674 some later date the landlord announces for the first time an intention not to offer a renewal lease, pursuant to one of the exceptions authorized by section 54 of the Rent Stabilization Code, the burden is upon the landlord to establish that during the specified period of 150 to 120 days prior to the expiration of the lease (when landlord would otherwise have been obligated to offer tenant a renewal lease pursuant to section 60 of the code) the exception to the section 60 renewal requirement relied upon by the landlord was indeed extant. Where a landlord fails to sustain that burden, the tenant’s right to an offer of renewal is deemed to have vested during the period 150 to 120 days prior to the expiration of the lease, and that right may not thereafter be abrogated. Thus in Bosco v Zbikowski (NYLJ, Nov. 21, 1979, p 12, col 5 [App Term]), where the landlord did not tender a notice to renew between 150 and 120 days prior to the expiration date of the tenant’s lease, and eight weeks later decided he wanted the apartment for his mother-in-law, the court held: “We are of the opinion that since the grounds for removal urged under section 54(B) of the Code did not exist when the landlord was required to offer tenant a renewal lease, he may not maintain the present proceeding.” (See, also, Matter of D’Angelo [New York City Conciliation & Appeals Bd.], NYLJ, Jan. 31, 1979, p 6, col 2; cf. Simon v Elkon, NYLJ, April 26, 1976, p 6, col 1 [App Term]; Zorgniotti v Tous, NYLJ, Jan. 29, 1979, p 7, col 1.) In Matter of East 56th Plaza v New York City Conciliation & Appeals Bd. (80 AD2d 389), it was held that landlord’s tender of a notice to renew with proposed renewal lease annexed, pursuant to section 60 of the code, and tenant’s acceptance thereof, did not preclude the landlord, prior to landlord’s execution of the renewal lease, from adding a rider thereto which provided for cancellation of the rental lease under contingencies set forth in subdivision 7 of section 61 of the code.
Accepting as we do that the landlord must prove that during the period of 150 to 120 days before the expiration of tenant’s lease she intended not to renew tenant’s lease in order to give the apartment to her 87-year-old mother, we must look to the record to determine whether the landlord sustained her burden in that regard. Parenthetically, on *675 appeal landlord herself does not dispute that she had the burden of establishing that such an intent existed during the period of 150 to 120 days before the expiration of the tenant’s lease; landlord argues that the record sustains that burden.
Close examination of the record discloses that the landlord failed to even hazard a thought in relation to the critical 150- to 120-day period, as to when she formulated the intention of having her mother occupy apartment 1-W. Thus when her counsel inquired: “Q. Now, did there come a time when you determined on this course of procedure [i.e., install her mother in apartment 1-W]?” the landlord responded: “A. Well, I don’t think Mr. Goldstein, I can say, a particular date. It’s just that * * * 87 is a fine age, and my mother”.
And the transcript continues:
“the court: Please, only respond to the question.
“the witness: I don’t quite know how to answer it.
“the court: If you don’t know how to answer the question, or the question is not within your personal knowledge tell us that.
“the witness: What was the question?
“Q. When did you decide you wanted to recover this apartment?
“A. I couldn’t say, give you a day, Mr. Goldstein.”
It was based upon this quoted testimony that the court below concluded that the landlord had failed to sustain her burden of proving an intention, within the period of 150 to 120 days prior to the expiration of tenant’s lease, of having her mother occupy the apartment. The court properly found landlord did not sustain her burden of proof on that issue, and, accordingly, we affirm the judgment of possession rendered in favor of the tenant.