In re YONKERS HAMILTON SANITAR-
IUM INC., d/b/a Yonkers Professional
Hospital, Debtor.

Bankruptcy No. 80 B 20054.
82 Adv. 6073.

United States Bankruptcy Court,
S. D. New York.

Aug. 13, 1982.

Teitelbaum & Gamberg, P. C., New York City, for trustee.

John S. Martin, Jr., U. S. Atty. for the S. D. New York, New York City, for defendants; Stuart M. Bernstein, Asst. U. S. Atty., New York City, of counsel.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The defendant, the United States of America, Department of Health and Human Services (the government) urges the application of the doctrine of recoupment as a defense to this action by the trustee in bankruptcy of Yonkers Hamilton Sanitarium, Inc., d/b/a Yonkers Professional Hospital, to recover alleged preferential transfers made by the debtor to the government pursuant to an agreement with the government's fiscal intermediary, Blue Cross/Blue Shield of Greater New York, that called for the recapture of Medicare funds already received by the debtor due to an overpayment. The period in question covers the two years prior to the filing of the debtor's voluntary Chapter 11 petition on February

6, 1980. The debtor was unable to effect a reorganization with the result that an order for relief under Chapter 7 of the Bankruptcy Code was entered on May 2, 1980. The plaintiff is the trustee in bankruptcy who was thereafter appointed by the United States Trustee pursuant to § 11 U.S.C. 15701.

The government moved pursuant to F.R. C.P. 12 and Bankruptcy Rule 712 to dismiss the trustee's complaint for failure to state a claim upon which relief can be granted. The trustee cross moved under F.R.C.P. 56 and Bankruptcy Rule 756 for summary judgment. The operative facts are not disputed.

The debtor was a provider of medical services under the Medicare program, Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, et seq., which benefits persons 65 years of age and older. The program is administered by private fiscal intermediaries, such as the defendant, Blue Cross, pursuant to an agreement with the Secretary of the Department of Health and Human Services, 42 U.S.C. §§ 1395h, 1395u. Blue Cross, as a fiscal intermediary for the government, makes payments to providers of Medicare services, such as the debtor, who have entered into such provider agreements, and is then reimbursed by the government.

The provider agreement did not require or obligate the debtor to provide Medicare services to the insureds but rather provided only that the services would be paid for under the program if and when rendered by the debtor. Pursuant to the provider agreement the debtor, as a provider, agreed not to charge Medicare beneficiaries directly but instead agreed to bill the government for all services rendered to individuals covered by the Medicare program and to receive payment from the government for services provided. 42 U.S.C. § 1395u.

The Medicare program allows for partial interim payments (P.I.P.) to be made to the provider after it renders services. The bi-weekly P.I.P. payments that the debtor received from Blue Cross, the fiscal intermediary, to cover anticipated expenses under the Medicare program, were an approximation of the debtor's costs and expenses under the Medicare program, subject to adjustment after an audit at the close of each fiscal period, when the debtor, as a provider, was required to submit to Blue Cross a cost report for audit purposes. If the audit indicates the existence of an overpayment, the government must reclaim the overpayment from current and future payments to the provider. 42 U.S.C. § 1395g. See also 42 C.F.R. § 405.454(j). The government's regulations also provide that in the event of bankruptcy, any payments to the provider—

"... shall be adjusted by the intermediary, notwithstanding any regulation or program instruction regarding the timing or manner of such adjustments, to a level necessary to insure that no overpayment to the provider is made." 42 C.F.R. § 405.454(k).

The audit for the fiscal period of 1976 and prior years revealed that the debtor had received $534,863.00 in excess of the amount that it was entitled to receive. The debtor was in no position to repay the entire amount immediately. Instead of terminating the P.I.P. method of payment and thereafter requiring the debtor to submit actual billings for Medicare services rendered before further payments would be made, the government and Blue Cross agreed with the debtor to continue the P.I.P. payments. However, the parties agreed that each of the bi-weekly P.I.P. payments was to be reduced by the sum of $10,286.00 until the entire $534,863.00 was repaid. Additionally, the debtor contends that the government froze the debtor's reimbursement rate at the 1977 level, notwithstanding the debtor's notification that its rate should have increased.

The deductions of $10,286.00 from each P.I.P. payment of $113,200.00 commenced in January, 1978 and continued until April 21, 1982, two and one-half months after the debtor filed its Chapter 11 petition on February 6, 1980. During the year preceding the filing of the Chapter 11 petition, the sum of $246,864.00 was deducted from the

P.I.P. payments made during that period, of which $72,012.00 was deducted during the 90-day period immediately preceding the filing of the Chapter 11 petition. During the post-petition period from February 6, 1980 to April 21, 1980, an additional sum of $61,716.00 was deducted.

The trustee's complaint asserts three causes of action. The first cause of action seeks to recover $246,864. as an insider preference within the meaning of Code § 547(b)(4)(B). The second cause of action alleges the standard 90-day preference proscribes under Code § 547(b)(4)(A) and seeks to recover $72,012.00 that was deducted during such 90-day period. The third cause of action seeks to recover the $61,716.00 that was deducted during the post-petition period allegedly in violation of the automatic stay imposed under Code § 362(a).

### "INSIDER" PREFERENCE

■ Under Code § 547(b)(4)(B)(i) a trustee in bankruptcy is authorized to avoid a preferential transfer made to an insider during the period from 90 days to one year prior to the filing of the petition for relief. To avoid an insider preference during this period, the trustee must establish that the transferee was an "insider" at the time of the transfer and that the insider had reasonable cause to believe that the debtor was insolvent at the time of the transfer. Both of these elements need not be found in order to avoid an ordinary 90-day preference under Code § 547(b)(4)(A). For the definition of "insider" reference must be made to Code § 101(25). If the debtor is a corporation, an "insider" is defined under subsection (B) as a—

"(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;"

■ The trustee in bankruptcy contends that the government and Blue Cross should be regarded as a "person in control of the debtor" for the purpose of meeting the "insider" test. The element of control is apparently based upon the debtor's financial dependence on the revenues it expected to be paid by the government through its

fiscal intermediary, Blue Cross, for the debtor's services to Medicare patients.

The debtor's dependence upon the Medicare funds is not the type of "control" envisioned under Code § 101(25)(B) with respect to debtor corporations. The persons who might be expected to control a corporate debtor are its officers, directors and substantial stockholders. Thus, aside from officers and directors, a person is an insider if that person meets the test of an "affiliate" [§ 101(25)(E)] under Code § 101(2)(A) and:

"... directly or indirectly owns, controls, or holds with power to vote, 20 per cent or more of the outstanding voting securities of the debtor ...",

The Legislative History with respect to the definition of "affiliate" reveals that this term is defined primarily for use in the definition of an insider. *House Report No. 95–595*, 95th Cong. 1st Sess. (1977) 309 U.S. Code Cong. & Admin.News 1978, p. 5787. Hence, a corporate debtor may be influenced by the demands of its major customers or creditors but such influence alone does not constitute the requisite voting control contemplated under Code § 101(25)(B) for purposes of defining a person in control of a corporate debtor who might be regarded as an "insider."

■ There is a more fundamental reason why neither the government nor Blue Cross may be classified as insiders for the purpose of avoiding alleged transfers within the period from 90 days to one year before the filing of the debtor's Chapter 11 petition. Since the defendants are neither directors nor officers of the debtor corporation, the trustee must establish that they meet the test under Code § 101(25)(B)(iii) of a "person" in control of the corporate debtor. The term "person" is defined under Code § 101(30) to include individuals, partnerships and corporations "but does not include governmental unit." By definition, the government is expressly excluded as a "person" and therefore cannot be viewed as an "insider." The other defendant, Blue Cross, is merely the government's fiscal intermediary or conduit in this case and is

derivatively excluded from the definition of "person." The language in 42 C.F.R. § 421.5(b) (1980) states that the fiscal intermediary acts on behalf of the Administrator of the Department of Health and Human Services and the Health Care Financing Administration and that the "Administrator is the real party of interest in any litigation involving the administration of the program." See *United States v. Erika, Inc.*, —— U.S. ——, 102 S.Ct., 1650, 1653 n.4, 72 L.Ed.2d 12 (1982).

The trustee's counsel argues that a "governmental unit" is excluded from the definition of "person" only to prevent the mistaken belief that an involuntary bankruptcy case may be commenced against the government and except for this reason, the government may be viewed as a "person" and as an "insider." Indeed, the term "person" is employed in Code § 303(a) in describing who may be subject to an involuntary case. However, it does not follow that the term "person" should be given such unlimited application in the face of the express exclusion of a "governmental unit" from the definition of "person" in Code § 101(30). The trustee's counsel's argument as to this point is meritless.

█ The trustee's counsel next observes that Code § 106(c) provides that for purposes of applying the trustee's avoiding powers, Code provisions containing the terms "creditor" and "entity" are applicable to governmental units, notwithstanding any government assertions of sovereign immunity. Therefore, the trustee's counsel reasons that when the trustee seeks to avoid a preferential transfer under Code § 547, the rule excluding a "governmental unit" from the definition of "person" also does not apply. This argument is half right and therefore wrong. Subsections (a) and (b) of Code § 106 provide for a waiver of sovereign immunity for purposes of compulsory counterclaims and set offs when the government files a proof of claim. Notwithstanding the government's failure to file a proof of claim, it may not assert its sovereign immunity as a defense to the exercise of a trustee's avoiding powers be-

cause subsection (c) states that the terms "creditor" and "entity" apply to a "governmental unit." The term "creditor" is defined in Code § 101(9)(A) to mean an "entity that has a claim against the debtor . . .". "Entity" is defined in Code § 101(14) to include "person, estate, trust, *governmental unit*" [Emphasis added]. Thus, the government is expressly included within the meaning of "creditor" and "entity" as used in Code § 106(c), whereas it is expressly excluded within the meaning of "person" in Code § 101(30), and "insider" in Code § 101(25), as incorporated by reference in Code § 547(b)(4)(B)(i).

It is true that the government may not assert its sovereign immunity when sued by a trustee in bankruptcy in the exercise of the avoiding powers authorized under the Bankruptcy Code. *In re Community Hospital of Rockland County*, 15 B.R. 785, 8 B.C.D. 540, 5 C.B.C.2d 895 (B.C.S.D.N.Y. 1981); *In re Hudson Valley Ambulance Service, Inc.*, 11 B.R. 860 (B.C.S.D.N.Y.1981); *In re Remke, Inc.*, 5 B.R. 299, 6 B.C.D. 766, (B.C.E.D.Mich.1980). However, it would not logically follow that an explicit overriding of governmental sovereign immunity in § 106(c) serves as the basis for an argument that whenever a trustee's avoiding powers are at issue, every Code provision is similarly overriden. There is no hint whatsoever in Code § 101(30) that the exclusion of "governmental unit" from the definition of "person" is to be ignored in order to accommodate the trustee's assertion of his preference avoiding powers. There is nothing in Code § 106(c) that contradicts the clear exclusion of the government as a "person" in Code § 101(30) for incorporation by reference in the definition of "insider" in Code § 101(25)(B)(iii) as a "person in control." The trustee's counsel's tortured reasoning that the defendants should be treated as persons in control of the debtor and, therefore, insiders of the debtor, is unpersuasive and incorrect as a matter of law. Accordingly, the government may be sued by a trustee to recapture a preference received during the 90-day period prior to the filing of the petition, but the government cannot be sued as an insider and therefore cannot

be liable for preferences received between 90 days and one year before the filing of a bankruptcy petition. The trustee's first cause of action, which is bottomed on an insider preference theory, does not state a claim for relief. The defendant's motion to dismiss this cause of action is therefore granted.

### 90–DAY PREFERENCE

■ The trustee's second cause of action is intended to recapture the $72,012.00 that was deducted by the defendants during the 90 days immediately preceding the filing of the debtor's Chapter 11 petition. The trustee recognizes that an allowable setoff under Code § 553 is a type of preferential transfer that is recognized and is not avoidable under the Bankruptcy Code. Having set up its straw man by characterizing the $72,012.00 of Medicare overpayment adjustments as setoffs during the pre-petition 90-day period, the trustee then attempts to knock it down by asserting that these offsets improved the defendants' position during the 90-day period and are proscribed under Code § 553(b).

The right to effect a setoff is limited under Code § 553(b) in that it provides that where the setoff occurs within 90 days of bankruptcy, the trustee may recover the amount set off to the extent that the insufficiency on the date of setoff is less than the insufficiency existing on the later of 90 days before bankruptcy or the date on which an insufficiency first arises. Insufficiency is defined in Code § 553(b)(2) as the amount by which the claim against the debtor exceeds the debt available for setoff. In this case, the government's insufficiency during the 90-day period was decreased to the extent of the $72,012.00 that was deducted from the P.I.P. payments to reduce the debtors' obligation for Medicare overpayments that the debtor previously received.

The critical flaw in the trustee's position is that the $72,012.00 in deductions during the 90-day prepetition period were not setoffs; the deductions were in the nature of recoupments and are not governed by Code § 553(b).

■ A setoff under Code § 553 involves mutual debts or mutual credits between the estate of a debtor and a creditor whereby claims arising out of different transactions or occurrences are offset. *Quittner v. Los Angeles Steel Casting Co.*, 202 F.2d 814 (9 Cir. 1953); *Grace Line v. U. S.*, 144 F.Supp. 548, 550 (S.D.N.Y.1956), affd. 255 F.2d 810 (2d Cir. 1958); *In re Monongahela Rye Liquors*, 141 F.2d 864 (3d Cir. 1944); *Howard Johnson, Inc. v. Tucker*, 157 F.2d 959 (5th Cir. 1946).

■ Recoupments, unlike setoffs, do not involve the concept of mutuality of obligations and arise out of the same transaction rather than out of different transactions. As stated in 4 *Collier on Bankruptcy*, ¶ 553.03, at 553.12 (15th Ed. 1981):

"Recoupment ... is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim ... the defendant should be entitled to show that because of matters arising out of the transaction sued on, he is not liable in full for the plaintiff's claim. *There is no element of preference here or of an independent claim to be offset, but merely an arrival at a just and proper liability on the main issue, and this would seem permissible without any reference to former Section 68, or to Section 553(a)."* [Emphasis added]

In *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (D.C.W.D.Tenn.1981), pre-petition advances for royalties were given by CBS to a debtor who was a musician. When royalties were earned on the sale of records, CBS deducted the full amount of advances it previously made to the debtor and did not pay any royalties to him. The district court agreed with the trustee in bankruptcy that the royalty payments due from CBS were property of the estate (as were the P.I.P. payments in the instant case), but rejected the trustee's position that CBS' deductions constituted an impermissible setoff. The district court observed that the transaction was an allowable recoupment rather than a setoff and said:

"Additionally, the recoupment process is different from the requirements for setoff. While setoff under section 68 is limited to instances involving mutuality of obligation, recoupment is subject to no such limitation. See 2 Cowans, supra, at 122–23. The only real requirement regarding recoupment is that a sum can be reduced only by matters or claims arising out of the same transaction as the original sum. Id. at 121; *In re Monongahela Rye Liquors*, 141 F.2d 864, 869 (3d Cir. 1944). Despite the trustee's contention, the advances and royalties involved in this case unquestionably arise from the same transaction."

Counsel for the trustee concedes that the *Waldschmidt* case supra, is a classic example of the doctrine of recoupment. However, the trustee's counsel notes that there the creditor resorted to self-help and did not rely on the debtor's agreement to permit the recoupment. In the instant case the defendants continued to make new advances of P.I.P. payments to the debtor during the subsequent fiscal periods, but deducted a portion of the new P.I.P. payments to reduce its debt for the Medicare overpayment previously received. The deductions were effected pursuant to the optional method selected by the debtor in its letter agreement with Blue Cross. Therefore, the trustee's counsel concludes that such agreement supports a claim that the debtor made voluntary preferential transfers to the defendants that are avoidable under Code § 547(b)(4)(A).

■ Recoupment is no more avoidable as a preference because the debtor agreed to this manner of reducing the creditors' claim than if the creditor employed the self-help method. The voluntary aspect was compelled by the choices offered to the debtor by the defendants. Had the debtor not agreed to go along with the deductions, the defendants could have discontinued further P.I.P. advances to the debtor from which the deductions were made. The

Medicare Act gives the government the authority to adjust current and future Medicare reimbursement payments to recover prior overpayments. 42 U.S.C. §§ 1395g, 1395x(v)(1)(A). These reimbursement provisions codify the government's common law right of recoupment. *Mt. Sinai Hospital of Greater Miami, Inc. v. Weinberger*, 517 F.2d 329 (5th Cir. 1975), modified, 522 F.2d 179 (5th Cir. 1975), cert. denied 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1975); *Szekely v. Florida Medical Ass'n.*, 517 F.2d 345 (5th Cir. 1975), cert. denied 425 U.S. 960, 96 S.Ct. 1742, 48 L.Ed.2d 205 (1976); *Daytona Beach General Hospital, Inc. v. Weinberger*, 435 F.Supp. 891 (D.C.M. D.Fla.1977). See *United States v. Aquavella*, 615 F.2d 12 (2d Cir. 1979) (in a provider's action for damages, the government's claim for overpayment is a compulsory counterclaim).

Hence, the trustee's attempt to avoid the application of the recoupment doctrine because of the debtor's agreement to a method of repayment does not detract from the conclusion that recoupment is an adjustment of the debtor's liability and is not a transfer for the purpose of sustaining an avoidable preference. The trustee's second cause of action, based upon a 90-day avoidable preference, fails to state a claim upon which relief can be granted, and, as in the case of the first cause of action, is dismissed.

## POST–PETITION TRANSFERS AND THE AUTOMATIC STAY

The government's recoupment of Medicare overpayments continued for two and one-half months after the debtor filed its Chapter 11 petition with this court on February 6, 1980. Therefore the trustee in bankruptcy seeks to recover $61,716.00 under his third cause of action on the ground that such postpetition recoupment violated the automatic stay imposed under Code § 362(a)(3), (6) and (7).[1]

1. § 362. Automatic stay.

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

The government maintains that the debtor elected to continue its participation under the Medicare Provider agreement with the defendants and that the executory contract between the parties governed their relationship so that the debtor was bound to accept the government's recoupment right imposed under the contract and the existing law and regulations incorporated in the contract. Thus, the agreement between the parties, which the trustee unsuccessfully urged as an impediment to the concept of recoupment, is now asserted by the government as the basis for the position that the deductions are not subject to the automatic stay provisions of the Code.

Post-petition recoupment of Medicare over-payments was sustained by the district court in *Blue Cross of Western Pa. v. Monsour Medical Center*, 11 B.R. 1014 (D.C.W.D. Pa.1981) which was followed in *In re Berger*, 16 B.R. 236 (B.C.S.D.Fla.1981). In the *Monsour* case, the debtor and the Department of Health and Human Services entered into a pre-petition agreement permitting the government to reduce current interim payments in order to recapture prior Medicare overpayments. The debtor argued that the government's post-petition recoupment violated the automatic stay. The district court rejected this position and said 11 B.R. at p. 1018:

"The 1966 provider agreement can be seen as the express contract establishing the mutual obligations of Monsour and HHS. This agreement evidenced Monsour's eligibility to participate in the Medicare program but the terms of this participation were governed by Title XVIII of the Social Security Act (Medicare) and the implementing regulations. Therefore the agreement incorporated by necessary implication the relevant provisions of the Social Security Act and regulations."

.  .  .  .  .

For all of the foregoing reasons, this Court concludes an executory contract governed the relationship between Monsour and HHS at the time of Monsour's reorganization. Monsour accepted this executory contract. Adjustments of current payments by HHS are in accord with the terms of the accepted contract and do not violate the provisions of the Bankruptcy Code staying collection of antecedent debts, 11 U.S.C.A. § 362."

The trustee contends that the *Monsour* and *Berger* cases were incorrectly decided in that they viewed the relationship between the parties as though no bankruptcy petitions were filed. The trustee asserts that neither the *Monsour* nor the *Berger* case dealt with the obligation of a debtor to comply with Code § 365(b)(1)(A) and to cure defaults or provide adequate assurance that the debtor will promptly cure arrears before the defaulted contract may be assumed by the debtor. The trustee observes that in the instant case the defendants did not move this court to direct the debtor to assume or reject the contract and therefore it was improper for the debtor to permit the defendants to recapture the pre-petition Medicare overpayments pursuant to the pre-petition recoupment agreement.

There is no question that a debtor's right to assume an executory contract under Code § 365(a) is conditioned upon obtaining the bankruptcy court's consent and the curing of defaults in accordance with subsection (b)(1). If the debtor does not apply to the court to assume or reject an executory contract in a Chapter 11

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

.  .  .  .  .

(3) any act to obtain possession of property of the estate or of property from the estate;

(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

(7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor;

case, any party to such contract is permitted under Code § 365(d)(2) to apply to the court for an order directing the debtor to determine within a specified period of time whether to assume or reject such contract. It does not follow, however, that if neither party to an executory contract in a Chapter 11 case takes any action with respect to assumption or rejection, the contract has no significance. As long as the debtor continues to receive benefits under such contract it must also bear the burdens or obligations imposed under the contract. *In re Shoppers Paradise, Inc.*, 8 B.R. 271, 7 B.C.D. 69, 3 C.B.C.2d 484 (B.C.S.D.N.Y.1980). The *Monsour* and *Berger* cases are consistent with this principle and were not incorrectly decided, as the trustee's counsel contends.

The trustee's counsel next urges that even the *Monsour* and *Berger* courts would be forced to agree that if the arrangement between the parties was not an executory contract, they would not have permitted the continued deductions for prepetition debts owed under the Medicare program. Accordingly, the trustee's counsel submits that the provider agreement does not constitute an executory contract because it simply states that the debtor agrees to bill the defendants for medical services rendered to Medicare patients. It does not bind or obligate the debtor to provide any services to Medicare patients but only requires the debtor to bill the defendants instead of Medicare patients, if and when services are rendered.

The trustee's position elides the point that the debtor was notified by the Director of Provider Reimbursement, pursuant to a letter dated January 3, 1978, that the debtor received $534,863 in Medicare overpayments and that this amount had to be repaid within a 24-month period. Therefore, the debtor's right to receive future Medicare advances under the P.I.P. method depended upon the debtor's agreement to be bound by one of four optional methods of repayment. The debtor then entered into a written agreement, reflected by its letter dated January 10, 1978, wherein it selected one of the four optional repayment methods which called for a deduction of $10,286.00

from each future P.I.P. advance. This is the controlling executory agreement that applied to the recoupment transaction between the parties, and not simply the provider agreement. The defendants obligated themselves to continue making P.I.P. advances, whereas the debtor committed $10,-286.00 from each advance towards a repayment of the Medicare overpayments it previously received. The debtor's right to receive continued Medicare advances carried with it the burden of dedicating $10,286.00 from each future Medicare advance towards repayment of its existing obligation under the Medicare program.

The trustee may not assert the automatic stay as a weapon to obtain the gross benefits under a contract with the defendants and prevent the defendants from netting out against that contract the recoupment called for under the same agreement. The defendants' payment of the net amount of the P.I.P. advances to the debtor, subject to a $10,286.00 deduction from each payment towards repayment of the debtor's obligation for Medicare overpayments, cannot be regarded as a violation of the automatic stay provisions. Therefore the trustee's third cause of action is also defeated by the defendants' motion for dismissal.

Since it appears that no set of facts could be proven at trial which would entitle the trustee to any relief in the context of the trustee's three causes of action in the complaint, it follows that the defendants' motion to dismiss the complaint should be, and is, granted. See *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dioguardi v. Durning*, 139 F.2d 774 (2d Cir. 1944). Accordingly, the trustee's cross motion for summary judgment is denied.

SUBMIT ORDER on notice.