**In re NORSAL INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 092–71629–21.**

United States Bankruptcy Court, E.D. New York.

Oct. 14, 1992.

Hugh L. Rothbaum, Woodbury, N.Y., for debtor.

Stacey E. Printz, Office of Gen. Counsel, Long Island Lighting Co., Hicksville, N.Y., for Long Island Lighting Co.

## OPINION

CECELIA H. GOETZ, Bankruptcy Judge:

Norsal Industries, Inc. ("Norsal" or the "Debtor"), the debtor-in-possession, brought on by Order to Show Cause an omnibus motion which sought, among other relief, a determination of the reasonableness of additional security required by the Long Island Lighting Company ("LILCO") and an injunction barring LILCO from "utilizing or in anyway [sic] interfering with debtor's security deposit presently in Lilco's possession."

Inasmuch as Norsal is seeking injunctive relief, it should have proceeded by way of adversary proceeding. Fed.R.Bankr.P. 7001(7). Since LILCO, however, has not objected to Norsal's unorthodox procedure and since Norsal claims the facts are not in dispute and this is not denied by LILCO, the characterization of the proceeding is largely irrelevant. The Court has the power to resolve the matter on the pleadings before it. 11 U.S.C. § 105; *In re Public Serv. Co.*, 107 B.R. 441, 444 (Bankr.D.N.H. 1989).

The issue which the papers pose is whether LILCO violated the automatic stay imposed by 11 U.S.C. § 362 when it set off a pre-petition deposit it was holding against Norsal's pre-petition debt. A subsidiary issue is whether it further violated the

automatic stay when it sent three letters to Norsal requesting a new security deposit for post-petition service. Norsal claims to be entitled to damages pursuant to 11 U.S.C. § 362(h) for the claimed violations of the automatic stay. For the reasons which follow, the Court finds no violation of the automatic stay.

The Court further determines that LILCO is entitled to a deposit from Norsal for post-petition services, calculated as LILCO suggests.

Even had LILCO violated the automatic stay, the Court of Appeals for this Circuit has held that there can be no recovery under 11 U.S.C. § 362(h) by a corporate debtor, although sanctions may be available for contempt of court. *In re Chateaugay Corp.*, 920 F.2d 183 (2d Cir.1990); *In re Carney & Sons Trucking Serv. Inc.*, 142 B.R. 497 (Bankr.M.D.Fla.1992).

## FACTS

As Norsal concedes, there are no disputes as to the basic facts.

LILCO operates under the laws of New York State, New York's Code of Rules and Regulations and the electric and gas tariffs which LILCO has filed with the Public Service Commission ("PSC"). Under these laws, regulations and tariffs, LILCO is entitled to require security deposits from new commercial customers and qualifying existing commercial customers. N.Y.Pub.Serv. Law § 117 (McKinney 1989); N.Y.Comp. Codes R. & Regs. tit. 16 § 13.7 (1987). These laws, regulations and tariffs were in effect when Norsal received utility service from LILCO.

On March 28, 1980, Norsal applied for electric and gas service from LILCO for its business located at 85F Hoffman Lane South, Islandia, New York. LILCO required and received a $950 security deposit from Norsal on Account Number 836–05–1230. Ten years later, on March 6, 1990, Norsal applied for additional utility service and was asked for, and gave, a $2,775 deposit on a new account, Number 836–05–1250. One year later, LILCO received a third deposit on Account Number 836–05–1240 due to Norsal's delinquent payment history.[1]

On June 15, 1992, Norsal filed under Chapter 11 of the Bankruptcy Code. At that point in time LILCO held a total deposit of $6,395 from Norsal and Norsal's total indebtedness to LILCO was $9,258.92.

LILCO applied the $6,395 deposit, with accrued interest, towards Norsal's indebtedness and submitted a proof of claim for the difference, in the amount of $2,506.45.

Three letters from LILCO to Norsal followed requesting a deposit of $6,665 for post-petition services. That amount, LILCO says, represents an amount equal to two months' winter peak billing on Account Numbers 836–05–1230 and 836–05–1240 and two months' summer peak billing on Account 836–05–1250.

The Manager of the Credit Department for LILCO has submitted an affidavit stating that in connection with the deposit requested of Norsal pursuant to Section 366[2] of the Bankruptcy Code, he reviewed Norsal's payment history and discovered that Norsal had incurred late payment charges, assessed when an account is delinquent in its payment, every month in 1992 and ten months in 1991 on Account 836–05–1250, every month in 1992 and 11 months last year on Account 836–05–1240, and every month in 1992 and eight months in 1991 on

---

1. The Court will refer to the three accounts as 836–05–1230, 836–05–1240, and 836–05–1250 throughout the Opinion, because it is unable to determine the complete account numbers from LILCO's papers. For example, Account No. 836–05–1230 is referred to as both 836–05–1230–3 and 836–05–1230–4 in Mr. Woodward's Affidavit and as 03–836–1230–39 on the bills attached to LILCO's proof of claim.

2. 11 U.S.C. § 366 of the Bankruptcy Code insofar as relevant provides as follows:

(b) Such utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.

Account 836–05–1230. In light of the foregoing, he decided that two months' security deposit was warranted.

It is Norsal's position that LILCO had no right to apply the pre-petition deposit to the pre-petition indebtedness; that in doing so it violated the automatic stay; that that pre-petition deposit provides adequate assurance of post-petition performance and LILCO is entitled to no more under Section 366 of the Code.

## DISCUSSION

Despite what must be the ubiquitousness of the issue raised here, that is whether a utility company can set off a pre-petition deposit against a pre-petition debt, there is surprisingly little case law on the subject. One explanation may be that ordinarily the utility seeks relief from stay so that it can set off the pre-petition deposit against the pre-petition debt and relief is routinely granted. In this case, however, LILCO made no application for relief from stay and its representative stated in court that the practice which it followed here is one which is its customary and usual one, that is to simply reduce its pre-petition claim by the amount of any pre-petition deposit and file a claim for the balance.

LILCO finds warrant for the procedure it followed in the doctrine of recoupment. Recoupment and setoff are similar but not identical. A classic statement of the theory of recoupment is that of the Third Circuit in *Lee v. Schweiker*, 739 F.2d 870, 875 (3rd Cir.1984):

The doctrines of "setoff" and "recoupment" had their origins in the era of common law pleading, under which the scope of a "case" was far less inclusive than it is today, and under which claim joinder was far narrower. Both doctrines permitted countervailing claims, which otherwise could not have been asserted together, to be raised in a case based on any one of them. Both doctrines were subsequently adopted in bankruptcy, setoff by statute, *see* 11 U.S.C. § 108 (1976), repealed by Bankruptcy Reform Act of 1978, Pub.L. No. 95–895, 92 Stat. 2549 (1978); and recoup-

ment by decision, *see In re Monongahela Rye Liquors*, 141 F.2d 864 (3rd Cir.1944) ... The justification for the recoupment doctrine is that where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation and application of the limitations on setoff in bankruptcy would be inequitable.

(Footnotes omitted)

■ Recoupment and setoff bear many similarities, but for purposes of bankruptcy two points distinguish them. First, setoff of a pre-petition debt against a pre-petition claim is explicitly stayed by virtue of Section 362(a)(7). There is no such explicit prohibition on recoupment. Second, the right to setoff is limited by Section 553 of the Bankruptcy Code. There are no similar limitations on the right of recoupment.

■ Bankruptcy Judge Schwartzberg, in an opinion often quoted and cited, *In re Yonkers Hamilton Sanitarium, Inc.*, 22 B.R. 427, 432 (Bankr.S.D.N.Y.1982), *aff'd*, 34 B.R. 385 (S.D.N.Y.1983), states the controlling principles:

A setoff under Code § 553 involves mutual debts or mutual credits between the estate of a debtor and a creditor whereby claims arising out of different transactions or occurrences are offset. *Quittner v. Los Angeles Steel Casting Co.*, 202 F.2d 814 (9 Cir.1953); *Grace Line v. U.S.*, 144 F.Supp. 548, 550 (S.D.N.Y.1956), *aff'd* 255 F.2d 810 (2d Cir.1958); *In re Monongahela Rye Liquors*, 141 F.2d 864 (3d Cir.1944); *Howard Johnson, Inc. v. Tucker*, 157 F.2d 959 (5th Cir.1946).

Recoupments, unlike setoffs, do not involve the concept of mutuality of obligations and arise out of the same transaction rather than out of different transactions. As stated in 4 *Collier on Bankruptcy*, Par. 553.03, at 553.12 (15th Ed. 1981):

"Recoupment ... is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of

abatement or reduction of such claim ... the defendant should be entitled to show that because of matters arising out of the transaction sued on, he is not liable in full for the plaintiff's claim. *There is no element of preference here or of an independent claim to be offset, but merely an arrival at a just and proper liability on the main issue, and this would seem permissible without any reference to former Section 68, or to Section 553(a)."* [Emphasis added]

22 B.R. at 432.

■ Admittedly, LILCO did not get relief from the automatic stay before it acted. Therefore, it violated the automatic stay unless what it did was recoupment, to which Section 362(a)(7) does not apply.

Resolution of the issue as to whether LILCO violated Section 362(a)(7), therefore, turns on whether the deposit for utility services and the payment for utility services arose out of the same transaction. If they do, LILCO's actions were proper. The few courts that have had occasion to write on the issue of whether an advance deposit for utility services arises out of the same transaction as the provision of such services have all found, on one theory or another, that it does. *See, In re Miner Indus., Inc.,* 119 B.R. 6 (Bankr.D.R.I.1990) (electric services); *In re Public Serv. Co.,* 107 B.R. 441 (Bankr.D.N.H.1989) (electric service); *Brooks Shoe Mfg. Co. v. United Tel. Co.,* 39 B.R. 980 (E.D.Pa.1984) (telephone services). The decisions on utility services are in line with other situations involving advance payments or over-payments for services rendered over a period of time. *In re Holford,* 896 F.2d 176 (5th Cir.1990) (lease payments); *In re B & L Oil Co.,* 782 F.2d 155 (10th Cir.1986) (payments for oil purchases); *In re Yonkers Hamilton Sanitarium, Inc., supra,* 22 B.R. at 433; *Waldschmidt v. CBS, Inc.,* 14 B.R. 309 (M.D.Tenn.1981) (advance royalty payments).

Norsal argues that this was not one transaction because it was required to make three separate deposits over a period of time. It also points out that the rules and regulations of New York are not identical with those in the jurisdiction in which the provision of electric services has been held to be part of the same transaction as the requirement that a deposit be given. These small factual differences do not affect the unitary nature of the provision of services with the furnishing of a deposit. However many different times a deposit was demanded, the deposit given was still for the same service: the provision of electrical services to the Debtor.

■ Because LILCO was entitled to recoup the deposit made by the Debtor, LILCO did not violate the automatic stay by reducing the amount of the Debtor's pre-petition indebtedness by taking possession of the Debtor's pre-petition deposit.

■ The conclusion that LILCO is entitled to retain the pre-petition deposit on account of its pre-petition claim disposes of the Debtor's application to use the pre-petition deposit as security for post-petition indebtedness. 11 U.S.C. § 366(b) entitles LILCO to adequate assurance of payment in the form of a deposit or other security for services post-petition. LILCO is entitled to the deposit as demanded of $6,665.00, unless Norsal can show some reason why that amount is excessive. Since LILCO is entitled to a deposit for post-petition services, it did not violate the automatic stay in the letter it wrote requesting such a deposit.

In conclusion, the Court finds:

(1) The Court has jurisdiction over the subject matter and the parties in this core proceeding pursuant to 28 U.S.C. § 1334 and § 157(b)(2)(A).

(2) LILCO did not violate 11 U.S.C. § 362 when it recouped what Norsal had deposited with it in reduction of its claim against Norsal for unpaid electric services.

(3) LILCO did not violate the automatic stay in requesting a deposit to cover post-petition services. In so doing, it was not trying to collect a pre-petition claim.

(4) No action under 11 U.S.C. § 362(h) will lie in favor of Norsal, a corporate debtor, against LILCO.

Settle Order in accordance with the fore-going Opinion.