In re 105 EAST SECOND STREET ASSOCIATES, Debtor.

Alexander SCHACHTER, as trustee of 105 East Second Street Associates, Plaintiff

v.

Joanne TOLASSI, Defendant.

Bankruptcy No. 90B12895(JHG).
Adv. No. 96–8820A(JHG).

United States Bankruptcy Court, S.D. New York.

April 2, 1997.

Borah, Goldstein, Altschuler & Schwartz, P.C. by Lewis A. Lindenberg, New York City, for Plaintiff.

John N. Polakas, Brooklyn, NY, for Defendant.

### DECISION ON MOTIONS FOR SUMMARY JUDGMENT

JEFFRY H. GALLET, Bankruptcy Judge.

## I. INTRODUCTION

Plaintiff, Alexander Schachter, the Chapter 7 Trustee ("Trustee") of 105 East Second Street Associates ("Debtor"), moves[1] for summary judgment declaring that defendant Joanne Tolassi's ("Tolassi") pre-petition unsecured claim is not entitled to be set off against the Trustee's post conversion claim for rent. The Trustee requests judgment in the amount of $35,151.00 for rental arrears and an order directing the turnover of that amount.

Tolassi moves for summary judgment declaring that her pre-petition claim is one that "runs with the land" so as to bind the Trust-

ee, and can be setoff against the Trustee's post conversion claim for rent.

## II. FACTS

In January of 1985, Tolassi entered into a two-year lease ("the Lease") with the Debtor for a rent stabilized apartment at 105 East Second Street, New York City, from February 1, 1985 through January 31, 1987. The Lease was extended from time to time, as required by the Rent Stabilization Regulations of the Division of Housing and Community Renewal of the State of New York ("DHCR"). 9 NYCRR 2523.5.

On February 12, 1987, Tolassi filed a rent overcharge complaint with DHCR for the period February 1, 1985 through February 1, 1989.[2]

On September 12, 1990, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code ("the Code"). On October 22, 1991, the case was converted to one under Chapter 7 and the Trustee was appointed.

By order dated November 6, 1992, Tolassi was awarded rent refunds and penalties in the amount of $18,803.10.

Rather than enter judgment, and in accordance with DHCR procedures,[3] Tolassi began to deduct the rent overcharge from her rent as it became due for the period June 1993 through May 1995. By the end of May 1995, Tolassi had deducted the entire award against her rent and owed the Trustee $173.03.

In 1992, the Trustee commenced a series of summary proceedings against Tolassi in Housing Part of the New York City Civil Court. Each of these proceedings sought to evict Tolassi from her apartment for nonpayment of Rent. Each was eventually withdrawn because of the DHCR award.

---

**1.** Subject matter jurisdiction arises under 28 U.S.C. § 1334(b) and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core matter under 28 U.S.C. § 157(b)(2)(E).

**2.** As required by the Rent Stabilization Regulations, Tolassi was offered numerous lease renew-

als, the most recent of which expired on January 31, 1996. 9 NYCRR 2523.5.

**3.** 9 NYCRR 2526.1(e) provides in part that:

A tenant may recover any overcharge penalty established by the DHCR by deducting it from the rent due to the present owner at a rate not in excess of 20 percent of the amount of the penalty for any one month's rent.

Subsequent to the satisfaction of the DHCR award, Tolassi has paid rent to the Trustee from May 1995 through June 1996 in the amount of $4,945.00, leaving a balance due of $10,805.59.[4]

## III. LAW

### A. Standard for Summary Judgment

The Trustee and Tolassi have each moved for summary judgment under Federal Rule of Civil Procedure 56, which is made applicable to this adversary proceeding by Bankruptcy Rule 7056. Summary judgment is appropriate if the court determines that the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *In re Ionosphere Clubs, Inc.,* 147 B.R. 855, 856 (Bankr.S.D.N.Y.1992).

In considering a motion for summary judgment, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Cartier v. Lussier,* 955 F.2d 841, 845 (2d Cir.1992); *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986), *cert. denied,* 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). In fact, the allegations of the non-movant are to be taken as true and are to be given the benefit of doubt when they conflict with those of the movant. *Cruden v. Bank of New York,* 957 F.2d 961, 975 (2d Cir.1992); *Taggart v. Time Inc.,* 924 F.2d 43, 46 (2d Cir.1991); *Burtnieks v. City of New York,* 716 F.2d 982, 985–86 (2d Cir.1983).

The moving party initially bears the burden of establishing the absence of a genuine issue as to any material fact. *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Adickes v. S.H. Kress & Co.,* 398 U.S. 144,

157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *In re Ionosphere Clubs, Inc.,* 147 B.R. at 861. That burden can be satisfied by demonstrating the absence of evidence supporting the non-movant's case. *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2553–54. When a motion for summary judgment is made and supported by the movant, Rule 56(e) requires the non-moving party to set forth specific facts demonstrating that genuine issues of material fact remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The non-moving party may not defeat a properly supported motion for summary judgment by relying on self-serving and conclusory statements concerning the true nature of the facts. *Wyler v. United States,* 725 F.2d 156, 160 (2d Cir.1983). As the Supreme Court has noted, the non-moving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co.,* 475 U.S. at 586, 106 S.Ct. at 1355–56; *cf. In re Ionosphere Clubs, Inc.,* 147 B.R. at 861.

Here, as the parties each acknowledge, there are no issues of fact. This dispute is ripe for summary judgment.

### B. The Rent Stabilization Law

My examination of the of the Rent Stabilization Law must begin, as the New York Court of Appeals did in *Rent Stabilization Assoc. v. Higgins,* 83 N.Y.2d 156, 608 N.Y.S.2d 930, 630 N.E.2d 626 (1993), with a historical framework.

In response to what was found to be a severe housing shortage following World War II, the legislature enacted laws providing for rent control and, later, rent stabilization.[1] Perceiving that continuing need throughout the ensuing decades, the legislature has periodically extended rent regulation to the present day, most recently providing for deregulation only of apartments with monthly rents in excess of $2,000 (see, Rent Regulation Reform Act of 1993, L.1993, ch. 253 [extending rent

---

4. However, that balance does not take into account any possible New York State Law breach of warranty claims that Tolassi may have. New York State Real Prop. Law § 235–b.

control and rent stabilization until June 15, 1997] ).

The legislature in 1983 designated DHCR "the sole administrative agency to administer the regulation of residential rents" under the rent control and rent stabilization statutes (Omnibus Housing Act, L.1983, ch. 403, S 3), and in 1985 additionally granted DHCR authority to amend the Rent Stabilization Code (a body of regulations previously administered by a private association of property owners) (see, L.1985, ch. 888, S 2).

---

1. See, Emergency Housing Rent Control Law (L.1946, ch. 274, as amended [rent control outside New York City]); Local Emergency Housing Rent Control Act (L.1962, ch. 21, as amended [rent control within New York City]); City Rent and Rehabilitation Law (Administrative Code of City of N.Y. S 26.401 et seq. [rent control within New York City]); Rent Stabilization Law (Administrative Code SS 26–501 to 26–520, as amended [1969] [rent stabilization within New York City]); and Emergency Tenant Protection Act (L.1974, ch. 576, S 4, as amended [rent stabilization outside New York City]).

*Id.* at 164–65, 608 N.Y.S.2d 930, 630 N.E.2d 626.

 New York State, after a legislatively-declared housing emergency, exercised its police powers to regulate the occupancy and rents of certain apartments. Essentially, the Rent Stabilization Law grants a tenant a life estate[5] by vesting in the tenant, subject to being divested in accordance with law, the right to renew the tenancy at the expiration of each leased term on the original terms and conditions, at a maximum rental set by law. 9 NYCRR 2523.5; *Higgins,* supra; *525 Park Ave. Assocs. v. De Hoyas,* 125 Misc.2d 432, 479 N.Y.S.2d 685 (Civ.Ct.N.Y.C.1984), *aff'd,* 121 A.D.2d 908, 504 N.Y.S.2d 426 (1st Dept.), *aff'd,* 69 N.Y.2d 692, 512 N.Y.S.2d 21, 504 N.E.2d 388 (1986); *Short v. Graves,* 107 Misc.2d 194, 433 N.Y.S.2d 561 (N.Y.Civ.Ct. 1980),[6] *aff'd,* 109 Misc.2d 672, 442 N.Y.S.2d 359 (App.Term 1st 1981), *aff'd,* 88 A.D.2d 796, 450 N.Y.S.2d 928 (1st Dept.1982). The primary function of the Rent Stabilization

---

5. It may be argued that more than a life estate is granted because the right to renew can to transferred at death to certain of the tenant's family member. *Rent Stabilization Association of New York City, Inc. v. Higgins,* 83 N.Y.2d 156, 608 N.Y.S.2d 930, 630 N.E.2d 626 (1993).

system is to regulate the rents of apartments within its ambit. *8200 Realty Corp. v. Lindsay,* 27 N.Y.2d 124, 313 N.Y.S.2d 733, 261 N.E.2d 647, *cert. denied* 400 U.S. 962, 91 S.Ct. 367, 27 L.Ed.2d 381 (1970). The regulation of rents and occupancy is a legitimate interest of the State of New York. *Manocherian v. Lenox Hill Hospital,* 84 N.Y.2d 385, 618 N.Y.S.2d 857, 643 N.E.2d 479 (1994) *cert. denied* —— U.S. ——, 115 S.Ct. 1961, 131 L.Ed.2d 853 (1995).

As part of its regulations of rents, New York State permits a tenant to collect a DHCR rent overcharge award by applying it to rent due until the award is paid. 9 NYCRR 2526.1(e). Indeed, New York affords a DHCR awardee the right to collect an award from future rents due to subsequent owners. *Id.* (f)(2); *Gaines v. New York State Division of Housing and Community Renewal,* —— A.D.2d ——, 646 N.Y.S.2d 106 (1st Dept.1996). An exception to the rule is a purchaser who acquires title at an arms-length judicial sale. 9 N.Y.C.R.R. 2523.5(f)(2); *Gaines,* —— A.D.2d ——, 646 N.Y.S.2d 106 (1st Dept.1996). However, at least two New York courts have found that successors through bankruptcy do not come under that exception. *Gaines,* —— A.D.2d ——, 646 N.Y.S.2d 106 (1st Dept. 1996); *36 Plaza Corp. v. Marshall,* 168 Misc.2d 333, 644 N.Y.S.2d 457 (N.Y.Civ.Ct. 1996).

 The Trustee's succession to the subject real property does not fall under New York's exception. *Gaines,* —— A.D.2d ——, 646 N.Y.S.2d 106 (1st Dept.1996); *Marshall,* 168 Misc.2d 333, 644 N.Y.S.2d 457 (N.Y.Civ.Ct.1996). Under New York law, Tolassi will prevail. The Trustee argues that, not withstanding Tolassi's rights under state law, federal law precludes Tolassi from setting off her pre-conversion award against post petition rents.

---

6. *Short v. Graves,* 107 Misc.2d 194, 433 N.Y.S.2d 561 (Civ.Ct.N.Y.C.1980), was my decision sitting as a New York City Civil Court Judge in 1980.

## C. Setoff and Recoupment

The parties have argued the question of whether a creditor, with what is characterized as a pre-petition award for rental overcharges, is entitled to set it off against post petition rents due. The Trustee argues that Tolassi is not entitled to a setoff because the two claims are not mutual. Tolassi, on the other hand, argues that a setoff is proper because the award is essentially a covenant which runs with the land and any subsequent owners are bound by that award.

Although the arguments of the parties are interesting, it appears that they are based on an erroneous assumption of the law. The transaction before me is a recoupment rather than a setoff.

11 U.S.C. § 553 governs setoffs. It provides in part:

(a) Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case, . . . .

■ Under the legal and equitable principals of setoff, recognized by section 553(a), the mutual debt and claim contemplated are generally those arising from different transactions. A setoff is usually asserted for the purpose of reducing or extinguishing the creditor's claim against the debtor.

■ Recoupment, on the other hand, is a recovery of money owed arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim. "The distinction between a recoupment and a setoff is that a recoupment, unlike a setoff, does not involve the concept of mutuality of obligations and arises out of a single transaction between the creditor and the debtor." *Lee v. Schweiker*, 739 F.2d 870 (3d Cir.1984); *In re Yonkers Hamilton Sanitarium, Inc.*, 34 B.R. 385, 386 (S.D.N.Y.1983). *See generally* 5 Collier on Bankruptcy, ¶ 553.03 (15th ed. Rev.1996).

■ Setoff is only allowed in very narrow circumstances in bankruptcy, but a recouping creditor can receive preferred treatment even though a setoff would not be permitted. *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir.1986); *Lee*, supra; *In re Yonkers Hamilton Sanitarium, Inc.*, 34 B.R. at 386. The reasoning for this treatment is that when the creditor's claim "arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable." *In re B & L Oil Co.*, 782 F.2d at 157 (quoting *Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984)). The distinction between setoff and recoupment outside the context of bankruptcy is usually not significant. In the bankruptcy context this distinction becomes important because "11 U.S.C. § 553 codifies and governs the doctrine of setoff; whereas the code is silent with regard to recoupment. This has been interpreted by courts to mean that the recoupment claim is therefore independent of setoff rights under 11 U.S.C. § 553 and not restricted thereby." *In re B & L Oil Co.*, 782 F.2d at 157; *In re Vaughter*, 109 B.R. 229, 233 (Bankr.W.D.Tex.1989).[7] In this district, recoupment has been applied to allow the government to recover Medicare

---

7. The doctrine of recoupment has been applied in many situations. A claim for damages for alleged breach of a construction contract was applied to reduce the balance due under the construction contract. *In re Clowards, Inc.*, 42 B.R. 627 (Bankr.D.Idaho.1984). A record company was entitled to recoup the advances paid to a musician from post-petition record sales, in lieu of filing a claim as an unsecured creditor. *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (M.D.Tenn.1981). A creditor could recoup overpayments made pre-petition pursuant to an oil division order, by withholding money owed for purchases made post-petition. *In re B & L Oil Co.*, 782 F.2d 155 (10th Cir.1986). An employer could recoup pre-petition advances paid to the debtor against post-petition commissions, as long as the repayment was made in connection with actual sales promotion for which commissions were paid. *In re Vaughter*, 109 B.R. 229 (Bankr. W.D.Tex.1989). An electric utility could recoup the debtor's pre-petition security deposit to reduce its claim against the debtor for electrical services. *In re Norsal*, 147 B.R. 85 (Bankr. E.D.N.Y.1992).

overpayments from post-petition reimbursements to a hospital. *In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427 (Bankr. S.D.N.Y.1982), *aff'd,* 34 B.R. 385 (S.D.N.Y. 1983).[8]

█] I find that the occupancy of a rent stabilized apartment, under the statutory life estate, to be one continuous transaction. There is no longer any doubt the Rent Stabilization Law creates one continuous transaction. 9 NYCRR 2523.5; *Higgins,* supra; *525 Park Ave. Assocs.,* supra; *Short,* supra. Accordingly, the pre-conversion DHCR award may be recouped from post conversion rents.

### D. Automatic Stay

█] Although not considered by the parties, I must address the question of whether a recoupment is subject to the automatic stay. I find it is not. *In re Flagstaff Realty Assoc.,* 60 F.3d 1031 (3rd Cir.1995) (post-petition funds owing to the landlord may be recouped against pre-petition claims owed by the landlord despite the usually inflexible automatic stay provision of the Code); *In re Holford,* 896 F.2d 176, 179 (5th Cir.1990); *In re Norsal,* 147 B.R. 85, 88 (Bankr.E.D.N.Y. 1992); (recoupment was not subject to the automatic stay, "setoff of a pre-petition debt against a pre-petition claim is explicitly stayed by virtue of 362(a)(7). There is no such explicit prohibition on recoupment."); *In re Yonkers Hamilton Sanitarium, Inc.,* 34 B.R. 385 (S.D.N.Y.1983); *In re Maine,* 32 B.R. 452 (Bankr.W.D.N.Y.1983).

The facts before me are analogous to two appellate decisions where the Third and Fifth Circuit Courts of Appeals allowed tenants to recoup and found the automatic stay inapplicable. *In re Flagstaff Realty Assoc.,* 60 F.3d 1031 (3d Cir.1995); *In re Holford,* 896 F.2d 176 (5th Cir.1990).

In *Holford,* the Fifth Circuit held that "[t]he trustee of a bankruptcy estate 'takes the property subject to rights of recoupment.'" *In re Holford,* 896 F.2d at 179

(citing, *In re Career Consultants,* 84 B.R. 419, 426 (Bankr.E.D.Va.1988)). In addition, "'to the extent the damages equal or exceed the funds withheld, the debtor has no interest in the funds and, therefore, the stay has not been violated.'" *Id.* (citing *In re Career Consultants,* 84 B.R. at 424). In reversing the District Court for the Southern District of Texas, the Fifth Circuit held that it was proper for a lessee of office space, who leased the space from the debtor, to withhold a portion of the rent, owed to the debtor, in order to compensate the lessee for damages suffered by the debtor's bad acts. In addition to holding that the automatic stay did not apply, the Fifth Circuit also held that there need not be any express contractual right to withhold rental payments. *Id.* The Third Circuit followed *Holford* and held that the trustee in bankruptcy takes real property subject to a tenant's right of recoupment. *In re Flagstaff Realty Assoc.,* 60 F.3d at 1035.

*Holford* is similar to this case and highly persuasive. Both involve leases, a debtor's bad acts and a creditor's right to recoup losses suffered from future rent payments.

Furthermore, because bankruptcy courts apply recoupment as an equitable doctrine, to find that Tolassi was not entitled to recoup the DHCR award against future rental payments would result in a windfall for the debtor and its other creditors who would share in the distribution of the funds. *In re B & L Oil Co.,* 782 F.2d at 159; *In re Centergas, Inc.,* 172 B.R. 844, 849 (Bankr. N.D.Tex.1994).

I find that the automatic stay does not apply to a rent stabilized tenant's recoupment of the amount of a DHCR award made in accordance with applicable New York State Law. The landlord/tenant relationship contemplated by the Rent Stabilization Law is a flowing stream that continues as one transaction from the tenant's initial occupan-

---

**8.** However, more recently, in *In re Kings Terrace Nursing Home and Health Related Facility,* 184 B.R. 200 (S.D.N.Y.1995), the District Court affirmed the decision of the Bankruptcy Court which granted the debtor's motion for summary judgment to enjoin the New York State Department of Social Services ("DSS") from collecting alleged pre-petition Medicaid overpayments. However, in *Kings Terrace Nursing Home,* the Bankruptcy Court determined that DSS did not meet the same transaction test. *Kings Terrace Nursing Home* is distinguishable from this case.

cy until death, voluntary dissolution or statutory grounds cause it to terminate. 9 NYCRR 2523.5; *Higgins,* supra; *525 Park Ave. Assocs.,* supra; *Short,* supra.[9]

## IV. DECISION

The claims of the Trustee and Tolassi arise from the same transaction. They are mutually dependant and inseparable. Deducting the DHCR award from the rents due was a recoupment and, in my view, proper. It was not barred by the automatic stay.

Therefore Tolassi's motion for summary judgment is granted, and the Trustee's motion is denied.

The issue of the Trustee's claim for rents due and Tolassi's claim of an additional rent abatement under New York State's Warranty of Habitability Law (New York Real Property Law section 235-b) is properly an issue for the Housing Part of the Civil Court of the City of New York and this court defers to that court's expertise in such matters. To the extent that litigating these issues in Civil Court requires a lifting of the automatic stay, it is so lifted.

Settle order.

---

**9.** In coming to this conclusion, I am not unmindful of the *dicta* of my learned brother Judge Cornelius Blackshear in *In re Heafitz,* 85 B.R. 274 (Bankr.S.D.N.Y.1988), which held that recoupment was subject to the automatic stay. Judge Blackshear looked at recoupment before the Third and Fifth Circuit rulings in *Flagstaff* and *Holford.* Those decisions substantially clarify the automatic stay issue. *Heafitz* is factually distinguishable from the case before me. This case, and *Flagstaff* and *Holford,* address clear landlord and tenant issues where the single transaction is not subject to question. *Heafitz* addressed a much more complicated factual situation, where the rights of the parties, the equities of the situation and the right to recoupment, itself, were far less clear. However, to the extent that this opinion is contrary to *Heafitz,* I respectfully disagree with it.