In the Matter of VISITING NURSE AS-SOCIATION OF TAMPA BAY, INC., further d/b/a VNA of Tampa Bay, Debtor.

**VISITING NURSE ASSOCIATION OF TAMPA BAY, INC., further d/b/a VNA of Tampa Bay, Plaintiff,**

v.

**Louis SULLIVAN, Secretary of Health and Human Services (United States of America); Aetna Life Insurance Company, the Secretaries.**

Bankruptcy No. 89–5103–8B1.
Adv. No. 89–463.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Oct. 30, 1990.

Richard C. Prosser, for plaintiff.

Michael A. Cauley, Asst. U.S. Atty.

Louis B. Sullivan, Secretary of Health and Human Services.

David W. Carpenter, Asst. Regional Counsel, Dept. of Health & Human Service.

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE came on for consideration upon the Defendant, Louis Sullivan, M.D.'s Motion of the Secretary of Health and Human Services (Secretary) for Summary Judgment; Plaintiff, Visiting Nurse Association of Tampa Bay, Inc.'s (Debtor) Cross Motion for Summary Judgment; and Debtor's Motion to Assume Executory Contract, in Part, and to Reject Executory Contract, in Part. The Court reviewed the Motions and record and finds the relevant facts as follows:

Debtor is a home health agency which provides home health care services to elderly and indigent patients through the Medicare Program. The Defendant is the Secretary of Health and Human Services. He is responsible for administering the Health Insurance for the Aged and Disabled Program (Medicare Program).

On June 27, 1966, Debtor and the Secretary entered into a Provider Agreement where Debtor, as the Provider, agreed not to bill patients eligible under the Medicare Program for covered services and the Secretary agreed to reimburse the Debtor for the reasonable cost of furnishing covered services to Medicare recipients. Title 42 U.S.C. § 1395. The amount of the reimbursement is determined by a Fiscal Intermediary, in this case Aetna Life and Casualty Company of Clearwater, Florida (Aetna).

The determination of the amount of reimbursement is based on a cost report submitted by the Provider within three months after the close of each fiscal year. After the Fiscal Intermediary receives the end of year cost report from the Provider, it audits and adjusts the report to ensure compliance with the Medical regulations and manuals. If the Provider is not satisfied with the Fiscal Intermediary's determination, it may file an appeal with Provider Reimbursement Review Board within 180 days of the determination.

After reviewing the Debtor's cost reports for the periods ending December 31,

1985, 1986, and 1987, the Fiscal Intermediary determined the Secretary overpaid the Debtor in the amount of $205,319.00 for 1985, $211,652.00 for 1986, and $150,191.00 for 1987.

Congress has authorized the Fiscal Intermediary to make interim payments to the Provider to avoid cash flow problems. Title 42 U.S.C. § 1395. Pursuant to 42 C.F.R. § 405.1802, the Secretary may recoup 100% of the interim payments until the overpayments are recovered. On April 19, 1989, the Debtor and the Secretary entered into an agreement (Recoupment Schedule Agreement) which established a recoupment schedule of $8,200.00 per month. Under this agreement, the Fiscal Intermediary has been recouping $4,100.00 from each bi-weekly periodic payment made to the Debtor under the Provider Agreement. The 1985 overpayment was recouped in full and as of February 8, 1990, the amount owing was $181,885.64 for 1986 and $150,191.00 for 1987.

On July 20, 1989 Debtor filed for relief under Chapter 11 of the Bankruptcy Code. On October 20, 1989, after a hearing, the Court entered an order allowing the Defendants to recoup $8,200.00 per month pursuant to the Recoupment Schedule Agreement. The Order also directed the Debtor to assume or reject the Provider Agreement. The Debtor moved to assume the Provider Agreement and reject the April 19, 1989 Recoupment Schedule Agreement. On September 26, 1989, the Debtor filed a six-count complaint. Count I is an action for injunctive relief pursuant to Title 11 U.S.C. § 105 to enjoin the Secretary and the Fiscal Intermediary from terminating the Provider Agreement, interfering or interrupting the periodic payments to the Debtor and continuing to recover recoupments on a post-petition basis. Count II is an action to recover alleged preferential payments made to the Secretary and the Fiscal Intermediary within the one year period preceding the filing of the petition pursuant to Title 11 U.S.C. § 547. Count III is an action to recover post-petition pay-

ments made to the Secretary and the Fiscal Intermediary under the Medicare Program pursuant to Title 11 U.S.C. § 549. Count IV is an action for contempt or to impose sanctions for a violation of the automatic stay relating to the recovery of recoupments for alleged overpayments pursuant to Title 11 U.S.C. § 362. Count V is an action to liquidate the claims of the Secretary and the Fiscal Intermediary for alleged overpayments under the Medicare Program pursuant to Title 11 U.S.C. § 502(c)(1). Count VI is an action for a fraudulent transfer to recover all payments made to the Secretary and the Fiscal Intermediary during the one year period immediately preceding the filing of the petition pursuant to Title 11 U.S.C. § 548. Both the Debtor and the Secretary moved for summary judgment alleging there are no genuine issues of material fact in dispute and each is entitled to judgment as a matter of law.[1]

## HISTORICAL BACKGROUND OF DEBTOR

VNA is a not-for-profit organization which is engaged in the business of providing health care services. It is located in Tampa, Florida. The majority of these services, as stated before, are pursuant to a Provider Agreement entered into between the Debtor and the Secretary of Health and Human Services (Secretary), which is the Medicare Program. The Debtor admitted the Chapter 11 case was brought about by a discrepancy which arose between the Debtor and the Secretary in connection with the Medicare payments made to the Debtor for prior years (1985, 1986 and 1987). Because of the overpayment, the Secretary through its Fiscal Intermediary, Aetna Life Insurance Co. (Aetna), initiated a recoupment schedule whereby the Fiscal Intermediary collected alleged overpayments for prior years from current periodic payments made to the Debtor by the Fiscal Intermediary. Since the Debtor is compensated by Medicare for actual ex-

---

**1.** For an excellent overview of this "thicket", *see, In re Metropolitan Hospital,* 110 B.R. 731, 736

(Bankr.E.D.Pa.1990).

penses, the recoupment schedule reduced the available income to the Debtor. The Debtor, unable to meet its obligations as matured including certain payroll taxes in the amount of $172,000.00, filed the Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code on July 20, 1989.

The Bankruptcy Court on April 11, 1990, entered an order allowing the Debtor to sell its assets free and clear of liens and encumbrances to Infomed, Inc., for the purchase price of $360,000.00. The past receivables due the Debtor from the Secretary were not sold to Infomed, Inc. The Debtor continues to collect these payments due for previous services less any recoupment amount.

Debtor has proposed a liquidating plan. Through the adversary proceeding and the motion to assume the Provider Agreement and reject the Recoupment Schedule Agreement, the Debtor seeks to distribute the proceeds from the sale to Infomed, Inc., cut off the Secretary's right to recoup pre-petition overpayments post-petition, and bring previous recoupment amounts back into the estate and place the Secretary's claims within the context of general unsecured. Part and parcel of this adversary proceeding and plan is to obtain a judicial review of prior determinations by the Secretary regarding overpayments to the Debtor.

## MEDICARE PROCESS

Title 42 U.S.C. § 1395, which is Title XVIII of the Social Security Act establishes a federally funded health insurance program known as Medicare. This program is administered by the Secretary through the Health Care Financing Administration. The Debtor falls into a category known as Part A (Title 42 U.S.C. §§ 1395c–1395i–4) which provides home care services and is reimbursed through the Secretary. The determination of the amount of reimbursement due any health care provider such as the Debtor is made by a Fiscal Intermediary. The actual determination of the amount to be reimbursed the Provider is based on a cost report submitted by the Provider. *See,* 42 C.F.R. § 413.20(b). In order to avoid a cash flow problem for the Debtor because payment would be withheld prior to an audit of the cost report, the law provides for interim payments to be made, at least monthly, based on estimates and projections of the cost of the various services to the Medicare patients. The Fiscal Intermediary audits the reports, makes the adjustments which are necessary to ensure compliance with all the regulations and gives the Provider notice of any necessary adjustments. 42 C.F.R. § 405.1803. Ultimately, it is the difference between the interim payments received and the amount found due upon the end-of-the-year audit which determines the overpayment or underpayment received by the Provider.

If the Provider disputes the Fiscal Intermediary's determination, in this case overpayment, the Provider may within 180 days, file an appeal with the Provider Reimbursement Review Board. This Board has the power to affirm, modify, or reverse the Fiscal Intermediary's decision. A decision of the Board is final unless the Secretary reverses, affirms, or modifies the decision within sixty days of the Provider receiving notice of the Board's decision. Title 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. § 405.1835; 405.1869. Only after the Provider exhausts these administrative remedies, may it seek judicial review in the District Court.[2]

Although the Secretary is authorized to recoup 100% of the interim payments until all overpayments are recovered, as noted earlier, the Debtor and the Secretary entered into a Recoupment Schedule Agreement on April 19, 1989 allowing a recoupment schedule of $8,200.00 per month. The Fiscal Intermediary has been recouping the $4,100.00 from each biweekly periodic payment made to the Debtor. The Debtor was receiving interim payments from the Secretary through the Fiscal Intermediary in the amount of $39,455.00 bi-

2. The Debtor has appealed the 1986 and 1987 determination of overpayment to the Provider Reimbursement Review Board. The 1988 cost report was received by the Fiscal Intermediary on March 31, 1989 and remains unaudited by the Fiscal Intermediary. The 1989 audit report was due in March 1990. This decision does not concern 1988 or 1989 overpayments, if any.

weekly, less the $4,100.00 recoupment. The 1985 overpayment has been recouped in full and as of February 8, 1990, the overpayment for 1986 was $181,885.64 and for 1987 was $150,191.00. The Debtor moved to assume the Provider Agreement which authorized the payment, but sought to reject the April 19, 1989, Recoupment Schedule Agreement.

## STANDARD OF CONSIDERATION OF MOTIONS FOR SUMMARY JUDGMENT

These Motions for Summary Judgment came on for consideration and the Court, hearing oral argument, considering the affidavits and record in this case, has formulated this opinion to dispose of these Motions for Summary Judgment upon all evidence properly placed before it. There is no genuine issue of material fact. This Court may determine from such evidence that a moving party is entitled as a matter of law to judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Debtor in this case seeks to have the Bankruptcy Court determine disputes over Medicare payments between Debtor, the Fiscal Intermediary, and the Secretary. Such a process appears appropriate considering this Court would have jurisdiction under Title 28 U.S.C. § 157(b)(2)(E), (F), (G) and (H) and specifically Title 28 U.S.C. § 157(b)(2)(B) regarding the allowance or disallowance of claims. Notwithstanding that consideration of jurisdiction, it is quite clear the Medicare process of determining underpayments and overpayments is more than a mere administrative process. The Supreme Court has characterized it as "sweeping and direct" to such an extent to bar Court jurisdiction under Title 28 U.S.C. § 1331 except as authorized by the Social Security Act. *See, Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975). *American Federation of Home Health Agencies, Inc. v. Heckler,* 754 F.2d 896, 897–898 (11th Cir.1984). The overwhelming consensus is the federal courts do not have jurisdiction to hear challenges between Medicare Providers and the Secretary nor the Program Reimbursement Review Board without an exhaust of administrative remedies. *Charter Medical Corp. v. Bowen,* 788 F.2d 728 (11th Cir.1986); *United States v. Graham,* 471 F.Supp. 123 (S.D.Tex.1979); *Gingold v. United States (In re Shelby County Healthcare Services of Al, Inc.),* 80 B.R. 555 (Bankr.N.D.Ga.1987); *In re Berger,* 16 B.R. 236 (Bankr.S.D.Fla.1981). The Provider has not exhausted all the administrative remedies before coming to this Court. This Court has no greater jurisdiction under these circumstances. Therefore, as to the Debtor's action under Count V to liquidate the claims of the Secretary and the Fiscal Intermediary, the Cross Motion for Summary Judgment by the Debtor will be denied and the Motion for Summary Judgment by the Secretary will be granted. The other issues raised in the Complaint, while germane to this general jurisdictional issue, can be resolved within the Court's jurisdiction as it does not appear such activity will invade the jurisdiction established through the Social Security Act.

## RECOUPMENT, ASSUMPTION, AND VIOLATION OF AUTOMATIC STAY

The act of the Secretary to have pre-petition overpayments paid by deducting funds from post-petition payments to the Debtor under the Provider Agreement is recoupment. *Long Term Disability Plan of Hoffman–LaRoche, Inc. v. Hiler (In re Hiler),* 99 B.R. 238 (Bankr.N.J.1989); *In re Memorial Hospital of Iowa County, Inc.,* 82 B.R. 478 (W.D.Wis.1988), *appeal dismissed,* 862 F.2d 1299 (7th Cir.1988); *cf. American Central Airlines, Inc. v. Department of Transportation (In re American Central Airlines, Inc.),* 60 B.R. 587 (Bankr.N.D.Iowa 1986). The right of recoupment is not only provided in the Recoupment Schedule Agreement between

the parties, but also arises within the statutory scheme established by the Medicare Program. Title 42 U.S.C. § 1395g(a). Even if the statute was silent and the Recoupment Schedule Agreement rejected, the common law right to recoupment allows such action on the part of the Secretary. *Mount Sinai Hospital of Greater Miami, Inc. v. Weinberger,* 517 F.2d 329 (5th Cir.1975), *cert. denied,* 425 U.S. 935, 96 S.Ct. 1665, 48 L.Ed.2d 176 (1976); *Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533 (10th Cir.1990). *Neuman v. Blue Cross/Blue Shield of Greater New York (In re Neuman),* 55 B.R. 702 (S.D.N.Y.1985).

■ Debtor seeks to assume the Provider Agreement and reject the Recoupment Schedule Agreement. Admittedly, there are arguments the Debtor should not be allowed to assume the benefits of a contract and reject the burdens. *In re Yonkers Hamilton Sanitarium, Inc.,* 22 B.R. 427 (Bankr.S.D.N.Y.1982), *aff'd,* 34 B.R. 385 (S.D.N.Y.1983). Conversely, there are arguments that contracts can be severed and partially assumed and partially rejected. *Byrd v. Gardinier, Inc. (In re Gardinier, Inc.),* 831 F.2d 974 (11th Cir.1987), *cert. denied,* 488 U.S. 853, 109 S.Ct. 140, 102 L.Ed.2d 112 (1988). Notwithstanding these arguments, Debtor is bound by the doctrine of recoupment. *See, Advanced Professional Home Health Care Inc. v. Bowen (In re Advanced Professional Home Health Care Inc.),* 94 B.R. 95 (E.D. Mich.1988). *In re Maine,* 32 B.R. 452 (Bankr.W.D.N.Y.1983). The Recoupment Schedule Agreement merely provides a method of partial payment to assist the Debtor from losing all revenues until the overpayment is paid back. It is a benefit to the Debtor. It precludes a total recoupment before payments to the Debtor continue. Whether the Recoupment Schedule Agreement is rejected or deemed unassumable as a financial accommodation under Section 365(c)(2), the Secretary still has a right to recoup. *In re Memorial Hospital of Iowa County, Inc., supra.* Therefore, the Court grants the Debtor's motion to assume the Provider Agreement and denies the Debtor's motion to reject the Recoupment Schedule Agreement.

■ With the right to recoup may come an exemption from the automatic stay of Section 362 of the Bankruptcy Code. This Court determines the Secretary's right of recoupment under prevailing statutes is exempt from operation of the automatic stay. *Holford v. Powers (In re Holford),* 896 F.2d 176, 179 (5th Cir.1990). While such exemption may appear to run against the grain of bankruptcy policy, one must recognize the Medicare system is a phenomenally regulated industry. Even more so is the acknowledgement by the federal courts of the Medicare quasi judicial system and its ability to determine overpayments and underpayments, all of which must be exhausted within that system before this Court can take jurisdiction. Exemption under Title 11 U.S.C. § 362(b)(4) does apply to acts of recoupment by the Secretary. This conclusion is bolstered by the fact the Debtor seeks the benefits and the protection of the Medicare system. It continues to take the payments under the Provider Agreement and utilize the appellate process of the Medicare system. *United States v. Midwest Service and Supply Co., Inc. (In re Midwest Service and Supply Co., Inc.),* 44 B.R. 262 (Utah 1983); *Blue Cross of Western Pa. v. Monsour Medical Center (In the Matter of Monsour Medical Center),* 8 B.R. 606 (Bankr.W.D.Pa.1981), *aff'd,* 11 B.R. 1014 (W.D.Pa.1981); *In re Yonkers Hamilton Sanitarium, Inc., supra.*

Federal courts have consistently distinguished between setoff and recoupment. Section 553 of the Bankruptcy Code only applies to setoff. *In re American Central Airlines, Inc., supra.* Consistent with this distinction, Section 362(a)(7) establishes the automatic stay specifically as to setoff but does not mention the stay specifically applying to recoupment.

There are numerous cases dealing with recoupment and the stay. The majority of them dealing with government recoupment have determined under the general equity proposition associated with recoupment, the debtor cannot hide behind the automatic stay to protect himself from the burden

of such contract while reaping the benefits of the same contract. *In re Hiler, supra; In re Advanced Professional Home Health Care Inc., supra.* Those decisions which may be adverse to the classic analysis can be distinguished. *Lee v. Schweiker,* 739 F.2d 870 (3rd Cir.1984) dealt solely with social security benefits for individuals. Nonetheless, it also spoke to the fact a debtor could not take the benefits of a contract and strike off the burdens. In *Massachusetts v. Dartmouth House Nursing Home, Inc. (In re Dartmouth House Nursing Home, Inc.),* 24 B.R. 256 (Bankr. Mass.1982), *appeal dismissed,* 30 B.R. 56 (1st Cir.BAP 1983), the court focuses on the question of setoff, not recoupment, nor does it consider the broad statutory scheme associated with Medicare. Two decisions from the Eastern District of Pennsylvania, *Hiser v. Blue Cross of Greater Philadelphia (In re St. Mary Hospital),* 89 B.R. 503 (Bankr.E.D.Pa.1988) and *University Medical Center v. Bowen (In re University Medical Center),* 93 B.R. 412 (Bankr.E. D.Pa.1988) are also adverse to the majority position. However, those cases can be distinguished. They consider the acts of the government within Section 525(a) of the Code. More so, in each of those cases the Court notes a present lack of interest in assuming Provider agreements.[3] *See also, In re Memorial Hospital of Iowa County, Inc., supra.* Clearly, the matter of assumption of the Provider Agreement is before this Court.

If the Debtor believes it should be protected from this post-petition invasion, it can always seek relief under Section 105 of the Bankruptcy Code. *V.N.A. of Greater Tift County, Inc. v. Heckler,* 711 F.2d 1020 (11th Cir.1983), *cert. denied,* 466 U.S. 936, 104 S.Ct. 1908, 80 L.Ed.2d 457 (1984); *but see, Richmond Paramedical Services, Inc. v. United States Department of Health and Human Services (In re Richmond Paramedical Services, Inc.),* 94 B.R. 881 (Bankr.E.D.Va.1988). It would, however, have to provide some form of adequate protection which could always take the form of recoupment payments.

It is to be noted any deviation from recoupment and within the statutory mechanism may bring the Secretary's actions within the ambit of Section 362(a), i.e., seeking recoupment when the facts establish setoff; seeking repayments under a promissory note; seeking post-petition payments for separate pre-petition contracts or attempts to expel debtors from Medicare system. *See, Ashland Petroleum Co. v. Appel (In re B & L Oil Co.),* 782 F.2d 155 (10th Cir.1986); *In re Metropolitan Hospital,* 110 B.R. 731 (Bankr.E.D.Pa.1990); *Tidewater Memorial Hospital, Inc. v. Bowen (In re Tidewater Memorial Hospital, Inc.),* 106 B.R. 876 (Bankr.E.D.Va. 1989); *see also, In re University Medical Center, supra; In re St. Mary Hospital, supra; In re Adana Mortgage Bankers, Inc.,* 12 B.R. 989 (Bankr.N.D.Ga.1980), *vacated,* 687 F.2d 344 (11th Cir.1982). *See also,* Wynn, *Freeze and Recoupment; Methods for Circumventing the Automatic Stay?,* 5 Bankr.Dev.J. 85 (1987). For these reasons, the Court grants the Secretary's Motion as to Count IV regarding contempt or violations of the automatic stay and denies the Debtor's Cross Motion for Summary Judgment as to Count IV.

## PREFERENCES AND FRAUDULENT TRANSFERS

█ Debtor takes the position the recoupment is a preference or a fraudulent transfer under Sections 547, 548, or 549 of the Bankruptcy Code. It is quite clear that if the Secretary's offset of overpayments was characterized as a setoff, Section 547 would not be the applicable preference section. *In re Moses,* 91 B.R. 994 (Bankr.M.D. Fla.1988). Section 553 would be the appropriate section to consider preferences created by setoff. *See, Lee v. Schweiker, supra; In re Yonkers Hamilton Sanitarium, Inc., supra* at 432–433; *In re American Central Airlines, Inc., supra.* All the courts reviewing recoupment within the concept of preference have looked to Sec-

3. The decisions, *In re St. Mary Hospital* and *In re University Medical Center* are questioned in *In re Metropolitan Hospital,* 110 B.R. 731, n. 9 (Bankr.E.D.Pa.1990).

tion 553 and to *Collier on Bankruptcy* and have determined there is no preference.

> Recoupment ... is the setting up of a demand arising from the same transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement or reduction of such claim ... Certainly in any suit or action between the estate and another, the defendant should be entitled to show that because of matters arising out of the transaction sued on, he is not liable in full for the plaintiff's claim. There is no element of preference here or of an independent claim to be offset, but merely an arrival at a just and proper liability on the main issue, and this would seen permissible under any reference to former Section 68 or to Section 553(a).

4 *Collier on Bankruptcy,* ¶ 553.03 at 553–12 (15th Ed.1983). *See, In re Midwest Service and Supply Co., Inc., supra* at 266. The Court finds no authority to support a recoupment is either a preference, pre-petition or post-petition, nor a fraudulent transfer. More importantly, Debtor has presented no evidence establishing under the facts presented here that a pre-petition or post-petition preference or fraudulent transfer had taken place.[4] Assuming there was a transfer of the Debtor by way of recoupment, i.e., the Recoupment Schedule Agreement, we do not find any evidence to suggest it was with actual intent to delay or defraud the Debtor or its creditors. More importantly, there is no evidence nor proof the Recoupment Schedule Agreement would be less than the reasonably equivalent value in exchange for such transfer. This is especially true in light of the administrative processes which are utilized by the Secretary to determine overpayments and the Debtor's ability to have those reviewed by a federal court. Therefore, the Court grants the Secretary's Motion for Summary Judgment as to Counts II, III, and VI and denies Debtor's Cross Motion for Summary Judgment on those same Counts.

INJUNCTION

Debtor has requested in Count I of its Complaint for this Court to enter a permanent injunction against the Secretary and the Fiscal Intermediary, enjoining them from terminating the Provider Agreement and ceasing, interrupting or interfering with any interim payment to the Debtor; effectuating or attempting to effectuate any post-petition recoupment based upon the Recoupment Schedule Agreement. In light of the fact this Court has already determined Debtor may assume the Provider Agreement and with it all the rights associated with administrative review under the Social Security Act, then that request for injunctive relief must be deemed moot. In addition, in light of this Court's ruling regarding the ability of the Secretary to recoup, the Debtor's Cross Motion for Summary Judgment as regards enjoining the Secretary and the Fiscal Intermediary from recouping overpayments must also be denied. Since the filing of the Complaint, the Debtor has ceased doing business and has, in fact, sold its health care service business to Infomed, Inc. Thus, there is no irreparable damage to the patients of the Debtor from any acts of the Secretary. In fact, any injunction at this point regarding the acts of the Secretary would not only invade on the administrative process, thus being outside this Court's jurisdiction, but in effect may be detrimental to the Debtor in that it would slow the administrative review process on present payment disputes between the Debtor and the Secretary. *See, V.N.A. of Greater Tift County, Inc. v. Heckler, supra; Andrews v. Blue Cross and Blue Shield of Michigan (In the Matter of Clawson Medical, Rehabilitation, and Pain Care Center, P.C.),* 12 B.R. 647 (E.D.Mich.1981); *In re Richmond Paramedical Services, Inc., supra* at 884.

Accordingly, it is

4. Secretary has raised the defense of recoupment to the claims of preference and fraudulent transfer. Recoupment is a well recognized defense to these causes of action. *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.),* 782 F.2d 155 (10th Cir.1986); *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir.1984); *Goldstein v. McLean Bank (In the Matter of Johnson),* 552 F.2d 1072, 1078 (4th Cir.1977); *Electronic Metal Products, Inc. v. Honeywell, Inc.,* 95 B.R. 768 (Colo.1989).

ORDERED, ADJUDGED AND DE-CREED the Secretary's Motion for Summary Judgment on all counts is granted. Debtor's Cross Motion for Summary Judgment on all counts is denied. It is further

ORDERED, ADJUDGED AND DE-CREED Debtor's motion to assume the Provider Agreement is granted. The motion to reject the April 19, 1989 Recoupment Schedule Agreement is denied.

DONE AND ORDERED.