**MERCY HOSPITAL OF WATERTOWN,
d/b/a Mercy Center for Health
Services, Appellant,**

v.

**NEW YORK STATE DEPARTMENT OF
SOCIAL SERVICES, Appellee.**

No. 93–CV–1585.

United States District Court,
N.D. New York.

July 27, 1994.

The Quinn Firm (Donna M. Quinn, of counsel), Albany, NY, for appellant.

G. Oliver Koppell, Atty. Gen., State of New York, Dept. of Law (Sue H.R. Adler, Asst. Atty. Gen., of counsel), Albany, NY, for appellee.

### MEMORANDUM DECISION AND ORDER

CHOLAKIS, District Judge.

Mercy Hospital of Watertown (Mercy) appeals from the Bankruptcy Court's (Judge Gerling) dismissal of its adversary proceeding against the New York State Department of Social Services (DSS). Mercy presents two issues on appeal: (1) Whether DSS's recoupment of pre-petition overpayment of Medicaid funds, through the reduction of post-petition payments, constitutes a claim by the state for the purposes of waiving sovereign immunity pursuant to 11 U.S.C. § 106(a); and (2) if subject matter jurisdiction arises under a waiver of sovereign immunity by the state, whether the recoupment of post-petition funds violates the automatic stay provision of Chapter 11.

### FACTS

Mercy was founded in 1894 under the auspices of the Religious Sisters of Mercy. Since the inception of the Social Security Act, Mercy has participated in the Medicaid Program and served eligible beneficiaries in accordance with Title XIX (codified as 42

U.S.C. § 1396 *et seq.*) and the Social Services Law of New York, § 363 *et seq.*

The Medicaid Program is jointly administered by federal and state governments and is implemented in New York solely by DSS. Payments by the state are made upon application of the provider in periodic installments. These payments are based on estimates of actual expenditures according to federal- and state-approved reimbursement rates and administered through separate provider numbers for each year of participation. DSS ultimately performs an audit to verify the accuracy of such estimates and compensates for overpayment and underpayment by adjusting subsequent payments. *See* 42 U.S.C. § 1396b.

On October 11, 1990, Mercy filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code. Prior to the filing, Mercy had received four separate provider numbers applicable to Mercy's then existing hospital based services. These numbers represented the reimbursement agreements for four separate years and were not assumed by the Debtor voluntarily or pursuant to the court's directive. See 11 U.S.C. § 365. Mercy continued to serve Medicaid patients as a debtor-in-possession throughout its reorganization and received a series of new numbers for services provided through its newly established facility, Mercy Center for Health Services, in 1991.

Subsequent to Mercy's Chapter 11 filing, DSS performed audits on the four pending provider numbers and reduced Mercy's post-petition payments to adjust for pre-petition overpayment. The state has recovered approximately $360,000 through such adjustments. However, the state has never filed a formal proof of claim.

On September 17, 1992, Mercy commenced an adversary proceeding in the Bankruptcy Court alleging that DSS improperly offset funds in violation of the automatic stay provision of Code § 362(a)(7) and seeking turnover on the basis that the withholding constituted improper setoffs and preferential adjustments. *See* 11 U.S.C. §§ 542 & 547. In

support of this argument, Mercy argued that by recovering Medicaid overpayment, DSS had filed the "functional equivalent" to a proof of claim, thus invoking the waiver of sovereign immunity provided for by Congress in § 106 of the Code.

On November 9, 1992, DSS moved to dismiss on the grounds that it had not made a claim under § 106, but rather it had only exercised a right of recoupment that is unaffected by bankruptcy. Therefore, it had not invoked a waiver of sovereign immunity, and Mercy was barred from bringing the action against it in federal court. Mercy cross-moved for summary judgment. Bankruptcy Judge Gerling granted DSS's motion and dismissed Mercy's action for lack of subject matter jurisdiction. Judge Gerling concluded that the recovery of overpayment constituted a recoupment rather than a set-off, and therefore, the recovery could not be characterized as a claim for purposes of waiving sovereign immunity. Accordingly, the court declined to reach the issue of whether DSS had violated the automatic stay.[1]

## DISCUSSION

■ The doctrine of sovereign immunity is rooted in the Eleventh Amendment's bar to suits against the state in federal courts. *See Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 907–08, 79 L.Ed.2d 67 (1984); *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). This proscription also extends to state agencies and departments. *See, e.g., Richards v. Appellate Division, Second Department,* 597 F.Supp. 689 (E.D.N.Y.1984).

■ In order to create a waiver of a state's Eleventh Amendment immunity, "Congress must make its intentions 'unmistakably clear in the language of the statute.'" *Hoffman v. Connecticut Department of Income Maintenance,* 492 U.S. 96, 101, 109 S.Ct. 2818, 2822, 106 L.Ed.2d 76 (1989) (citations omitted). Because Congress must express its intentions clearly, the Supreme Court has noted that "[l]egislative intent will

---

1. In making this determination, the court relied on the common law right of recoupment and relevant case law to characterize DSS's actions as recoupment; however, the court made no factual findings as to the content or relationship of the agreements between DSS and Mercy.

generally be irrelevant to a judicial inquiry into whether Congress intended to abrogate Eleventh Amendment immunity." *Id., citing, Dellmuth v. Muth,* 491 U.S. 223, 230, 109 S.Ct. 2397, 2401, 105 L.Ed.2d 181 (1989). In other words, either the language of the statute itself is clear enough to preclude any need to resort to legislative history, or else the statute will fail to meet the standards for valid statutory abrogation or waiver. *See Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985).

■ Some courts have distinguished abrogation of immunity from a waiver, the former of which is made pursuant to Congressional authority (e.g. waiving sovereign immunity under Title VII pursuant to the Commerce Clause), and the latter being more in the nature of a trade-off (e.g. participation in a federal subsidy scheme may be conditioned on limited waivers of immunity). *See In re 995 Fifth Avenue Associates, L.P.,* 963 F.2d 503, 506–509 (2nd Cir.1992). For a state to waive its immunity, therefore, implies the undertaking of some affirmative act on the part of the state.

■ The exception to Eleventh Amendment Immunity provided in Title 11 is apparently considered a waiver.[2] *See Hoffman v. Connecticut Department of Income Maintenance,* 492 U.S. 96, 101, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76 (1989); *In re 995 Fifth Avenue Associates, L.P.,* 963 F.2d 503, 506–509 (2nd Cir.1992) (Congress did not use the language of abrogation in § 106). Title 11 states at § 106:

(a) A governmental unit is deemed to have waived sovereign immunity with respect to any claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which such governmental unit's claim arose.

(b) There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.

(c) Except as provided in subsections (a) and (b) of this section and notwithstanding any assertion of sovereign immunity—

(1) a provision of this title that contains "creditor," "entity," or "governmental unit" applies to governmental units; and

(2) a determination by the court of an issue arising under such a provision binds governmental units.

11 U.S.C. § 106.

In applying this section, the Supreme Court has narrowly interpreted the language of subsection (c) to hold that it does not abrogate or create a waiver of Eleventh Amendment immunity to permit actions against a state under §§ 542(b) (turnover) or 547(b) (estate preference to avoid a debt) of the Code; instead the Court limited the application of § 106(c) to actions involving declaratory and injunctive relief. *See Hoffman v. Connecticut Department of Income Maintenance,* 492 U.S. 96, 101, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76 (1989). In dicta, the court reasoned that even the narrow waiver of immunity from money actions provided in sections (a) and (b) were premised on the state's act of filing a proof of claim. Although this discussion is merely dicta, the *Hoffman* decision does at least clarify that any waiver applicable to this case can only be asserted under § 106(a) or (b).

■ Therefore, in order to determine the applicability of the waiver statute, the court must inquire as to whether the state has made a "claim" to invoke the waiver, and whether such claim is considered property of the estate. Both inquiries converge inasmuch as they turn on whether DSS's adjustments are characterized as offset or recoupment.

■ The Code defines the term "claim" quite broadly to include any debt or claim to recovery and does not limit the term's application to formal proofs of claim filed with the

**2.** Whether Congress has authority to abrogate Eleventh Amendment immunity pursuant to its powers under the Bankruptcy Clause of the Constitution is an open question that has been avoided by interpreting § 106 as a waiver. *See Hoff-* *man v. Connecticut Department of Income Maintenance,* 492 U.S. 96, 101, 109 S.Ct. 2818, 2823, 106 L.Ed.2d 76 (1989); *In re 995 Fifth Avenue Associates, L.P.,* 963 F.2d 503, 506–509 (2nd Cir. 1992).

court. Section 101(5) defines "claim" as follows:

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(b) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment. . . .

11 U.S.C. § 101(5). Part 12 of § 101 further expands the definition of debt as a "liability on a claim." Given the broad application accorded to the terms defined within the Code, it would be hard to limit the meaning of claim within § 106 to a formal proof of claim based on the definition in § 101(5).

■ Several courts have applied § 106 to facts similar to those presented herein. Some of those cases have characterized the government's act of withholding post-petition reimbursement to adjust for pre-petition overpayment as the "functional equivalent" to filing a formal proof of claim. *See, e.g., In re Town & Country Home Nursing Services, Inc.,* 963 F.2d 1146, 1153 (9th Cir.1991);[3] *see also In re University Medical Center,* 973 F.2d 1065 (3rd Cir.1992). Although this application defies the assumptions made in the dicta of *Hoffman* and other Circuit cases (*see In re 995 Fifth Avenue Associates, L.P.,* 963 F.2d 503, 507, n. 1 (2nd Cir.1992)), the reasoning is certainly consistent with the plain language of the statute. For this reason, the Bankruptcy Court rejected DSS's argument that a formal proof of claim had to be filed in order to invoke the § 106 waiver and this court agrees.

■ The second issue, whether the alleged claim is part of the estate, implicates the question of whether adjusting post-petition payments to balance pre-petition overpayment operates as a recoupment or a setoff by the state.

The Code explicitly deals with setoffs in § 553 as follows:

Except as otherwise provided in this section and in sections 362 and 363 of this

title, this title does not affect any right of creditors to offset mutual debt owing by such creditor to the debtor that arose prior to commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . .

11 U.S.C. § 553(a). In plainer language, "[a] setoff under Code § 553 involves mutual debts or mutual credits between the estate of a debtor and a creditor whereby claims arising out of different transactions or occurrences are offset," *In re Yonkers Hamilton Sanitarium Inc.,* 22 B.R. 427, 432 (Bankr. S.D.N.Y.1982), *aff'd,* 34 B.R. 385 (S.D.N.Y. 1983) (quoted in *In re Norsal Industries, Inc.,* 147 B.R. 85, 89 (Bankr.E.D.N.Y.1992)). Section 362(a)(7) in turn renders the automatic stay applicable to "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). The automatic stay is therefore violated by a unilateral exercise of setoff of pre-petition claims against a post-petition payment to a debtor without first obtaining court approval. *See In re Village Craftsman, Inc.,* 160 B.R. 740 (Bankr.D.N.J. 1993), *citing, U.S. on behalf of the I.R.S. v. Norton,* 717 F.2d 767 (3rd Cir.1983).

■ The Code is silent as to recoupment. Under common law, recoupment is an equitable right that is based on the premise that "where the creditor's claim against the debtor arises from the same transaction as the debtor's claim, it is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation. . . ." *Lee v. Schweiker,* 739 F.2d 870, 875 (3rd Cir.1984); *In re Holford,* 896 F.2d 176, 178 (5th Cir. 1990). As such, recoupment operates as an exception to the requirement that debts arising post-petition may not be satisfied without obtaining relief from the automatic stay. *Newberry Electric, Inc. v. MCI Constructors, Inc.,* 161 B.R. 999 (9th Cir. BAP 1994). However, under the doctrine of recoupment, no affirmative recovery may be permitted.

---

**3.** The *Town & Country* court presumed that the adjustment was a setoff and did not contemplate the implications of recoupment. This analysis may have been due to the fact that the creditor's right was asserted pursuant to a separate promissory note signed by the Debtor.

*In re Rooster, Inc.,* 127 B.R. 560, 569 (Bankr. E.D.Pa.1991).

 Since the right to recoupment gives no right to actual payment, it is not a claim. *See Mullen v. United States,* 696 F.2d 470, 471 (6th Cir.1983). If it is neither a claim nor a debt, then it also not dischargeable under the Code. 11 U.S.C. § 524. Thus, courts have held that "[s]ince the right of recoupment ... provides no basis for an independent claim against the assets of the debtor or the estate, the right to recover against future benefits is not discharged." *Brown v. General Motors Corp.,* 152 B.R. 935 (W.D.Wis.1993) (citations omitted).[4] Accordingly, recoupment does not fall within even the broadest definition of claim for the purposes of waiving immunity under § 106(a) or (b). This policy is reasonable inasmuch as it prevents the debtor from obtaining the benefits of a contract without accepting its burdens, and it is consistent with the bankruptcy policy that executory contracts be assumed or rejected in whole. *In re Crippin,* 877 F.2d 594, 597 (7th Cir.1989); *In re Hiler,* 99 B.R. 238, 244 (Bankr.N.J.1989).[5]

 To determine whether particular rights fall within the scope of recoupment or setoff, the court must look to state law for guidance. *In re Village Craftsman, Inc.,* 160 B.R. 740 (Bankr.N.J.1993); *In re McClean Industries, Inc.,* 90 B.R. 614 (S.D.N.Y.1988). Recoupment, however, is interpreted narrowly in the context of bankruptcy because it is an equitable rather than statutory exception to the automatic stay provision. *In re Medical University Medical Center,* 973 F.2d 1065, 1081 (3rd Cir.1992).

Mercy argues against characterizing DSS's adjustments as recoupment on the basis that the pre-petition overpayment arose from a transaction distinct from the post-petition reimbursements to Mercy's reorganized facility. This argument relies heavily on the Third Circuit's decision in *In re Medical University Medical Center,* 973 F.2d 1065, 1081 (3rd Cir.1992). There, based on facts similar to those presented here, the Court of Appeals concluded that each annual reimbursement agreement constituted discrete transactions despite the ongoing relationship of the parties and the statutory right to recoupment. That court also rejected the notion that by accepting the benefit of post-petition reimbursements, the debtor impliedly assumed the burdens imposed by statutory and contractual rights to recoup overpayment on the part of the state. *Id.* Accord *In re Memorial Hospital,* 82 B.R. 478, 483–84 (Bankr.W.D.Wis.1988).

 Bankruptcy Judge Gerling rejected this analysis, and indeed, it would appear that there is little agreement on the issue.[6] The decision below instead relied heavily on 42 U.S.C. § 1396b which provides a right to recoup medicaid overpayment by adjusting future reimbursements. The lower court also relied on a substantial accumulation of case law favoring the application of the recoupment doctrine in this context. But as the decision notes, these decisions were "based on the fact that a contract existed which expressly provided for repayment of advances or overpayment. There presumably exists such a contract in this case, however, application of recoupment does not depend on an express contractual right to withhold payment." Aug. 5, 1993 Memorandum

---

4. *See also In re B & L Oil Co.,* 782 F.2d 155, 157 (10th Cir.1986); *In re Hiler,* 99 B.R. 238, 244 (Bankr.N.J.1989). Similarly, a party exercising the right of recoupment is not subject to the automatic stay provisions or the prohibitions against preferences or fraudulent transfers under §§ 362(a)(7), 547, 548 and 549 of the Code. *Matter of Visiting Nurse Association of Tampa Bay, Inc.,* 121 B.R. 114, 118–19, 120 (Bankr. M.D.Fla.1990) (citations omitted).

5. *But see In re Medical University Medical Center,* 973 F.2d 1065, 1081 (3rd Cir.1992) (Holding that the debtor's acceptance of the benefits of an executory contract with the state for medicaid

reimbursement did not constitute an assumption of the burden of recoupment absent a court order approving such assumption).

6. *See In re Four Seasons Care Centers, Inc. v. Unicare Homes, Inc.,* 119 B.R. 681 (Bankr. D.Minn.1990); *In re Yonkers Hamilton Sanitarium Inc.,* 34 B.R. 385, 387–388 (S.D.N.Y.1983) and *In re Visiting Nurse Association,* 121 B.R. 114, 118–19 (Bankr.M.D.Fla.1990) (all concluding that post-petition recoupment of pre-petition medicaid funds were permissible as recoupment).

**496**

and Decision Order (J. Gerling) (MDO) at 11, n. 3. (citations omitted). While the bankruptcy court correctly notes that the right of recoupment is not necessarily derived from express contractual provisions, the application of the recoupment doctrine is nonetheless premised on a factual finding that the adjustment in question relates to reciprocal obligations arising from the same transaction or series of transactions. *Westinghouse Electric Corp. v. Fidelity & Deposit Co.*, 63 B.R. 18, 21 (Bankr.E.D.Pa.1986). It is not apparent to this court that the bankruptcy court engaged in the factual inquiry necessary to make this determination.[7]

▮▮▮ Inasmuch as 42 U.S.C. § 1396b, also entitled "Payment to States," does not determine the mutual obligations between the *state* and the provider, the court is reluctant to accept a finding of recoupment solely on that basis. Moreover, in many of the relevant cases relied upon in the decision below, the courts engaged in a factual examination of the reimbursement contracts to conclude that they were sufficiently related under the doctrine of recoupment. For instance, in *In re Yonkers Hamilton Sanitarium Inc.*,[8] the court distinguished itself from *In re Dartmouth House Nursing Home, Inc.*, 24 B.R. 256, 954 (Bankr.D.Mass.1982), on the basis that in the *Dartmouth* case "overpayment had occurred under separate yearly provider agreements that had terminated at the time of filing ... [whereas] in this case there was a single continuing provider agreement still in effect at the time of the petition and continuing thereafter." *In re Yonkers Hamilton Sanitarium Inc.*, 34 B.R. 385, 388 (S.D.N.Y.1983).[9]

Although the court agrees with the reasoning in the lower proceeding, it finds that the lower court should be required to make an explicit factual finding that the pre- and post-petition rights and obligations are sufficiently related to fall within the scope of recoupment. This concern is rooted in the fact that when Mercy filed bankruptcy, it reorganized into a separate corporate entity. DSS is seeking to recoup overpayment to the previous entity against post-petition payments to the new entity which provides substantially different services. Nonetheless, the lower court made no reference to an actual investigation of the content of the contracts presumed to be a part of the same transaction. Accordingly, the decision cannot stand without further factual support.

Inasmuch as the question of whether DSS has waived its sovereign immunity precludes a determination of whether the automatic stay was violated by DSS, the court defers any consideration of the remaining issues on appeal pending remand for further findings by the lower court.

### CONCLUSION

For the reasons stated above, the court hereby remands this matter for factual findings by the Bankruptcy Court and further consideration not inconsistent with this decision.

IT IS SO ORDERED.

---

7. Indeed, the only reference to the contracts is in footnote 3 of Judge Gerling's decision, which indicates that the court did not make its own investigation of the contracts at issue. Instead, the court took the default position that recoupment could be based on common law rights outside any contractual obligations. However, the court does not appear to investigate the relationship between the parties, contractual or otherwise, other than to note that DSS made the pre-petition payments with the understanding that a right of recoupment was available. MDO at 12. Were this the only factor distinguishing recoupment from set-off, any and all withholdings of overpayment by federal and state government would be exempt from the Code. The court is of the opinion that further inquiry should inform this distinction, particularly where the

provider has engaged in reorganization into a distinct entity and separate reimbursement agreements have come into effect.

8. 22 B.R. 427, 432 (Bankr.S.D.N.Y.1982), *aff'd*, 34 B.R. 385 (S.D.N.Y.1988).

9. *Cf. In re Visiting Nurse Association of Tampa Bay Inc.*, 121 B.R. 114, 118–19 (Bankr.M.D.Fla. 1990). In *Visiting Nurse Association*, the recoupment was exercised directly by the Secretary of Health and Human Services under the Medicare statute. In addition, a Recoupment Schedule Agreement was formed by the parties prior to the bankruptcy filing. However, that court also acknowledged that the right to recoup existed independently under common law.