**In re CDM MANAGEMENT SERVICES, INC., Debtor.**

**Bankruptcy No. 96–02631–11.**

United States Bankruptcy Court, S.D. Indiana.

Feb. 26, 1997.

Eric C. Redman, Indianapolis, IN, for Debtor.

Elliott D. Levin, Indianapolis, IN, for Creditors' Committee.

Jane E. Griffin, Indianapolis, IN, for IN Dept. of Revenue.

## OPINION

LARRY L. LESSEN, Bankruptcy Judge.

The issue before the Court is whether a creditor may recoup prepetition advances on Medicaid claims payments from post-petition Medicaid payments due to the Debtor.

The material facts are not in dispute. The Debtor, CDM Management Services, Inc., d/b/a Vinewood Nursing Home, is a nursing home facility. The Debtor participates in the Medicaid Program and serves eligible beneficiaries in accordance with 42 U.S.C. § 1396 et seq. Medicaid is jointly funded by the federal and state governments and the program directly reimburses providers such as the Debtor for medical assistance services rendered to individuals eligible for the program.

The Secretary of the Indiana Family and Social Services Administration is responsible, through the Office of Medicaid Policy and Planning, for overall policy development and management of the State Medicaid plan. Ind.Code § 12–8–1–(b)(5). EDS is a fiscal agent under contract to the Indiana Family and Social Services Administration, Office of Medicaid Policy and Planning. EDS processes claims and issues checks to enrolled providers for covered services rendered to Medicaid recipients.

On January 26, 1994, the Debtor entered into an agreement to provide nursing home services for reimbursement by Medicaid. The agreement provides that the Debtor will comply with the Medicaid Program Provider Manual and subsequent bulletins and notices. On March 21, 1995, EDS issued a bulletin providing for application for advance payments by the provider. According to the bulletin, by application for the advances, the provider agreed to recoupment against future claims payments. The amount of the advance is determined by the value of the claims in process. The provider is only permitted to obtain an advance of 75% of claims in process.

At the request of the Debtor, EDS made a $14,250.00 advance on Medicaid payments to the Debtor on December 29, 1995. EDS made another advance to the Debtor on January 12, 1996, in the amount of $22,892.97. The accounts receivable recoupment percentage for recovery of these advances was originally set at 50%, but it was later reduced to 10% of subsequent claim payments. Recoupment continued until Indiana Family and Social Services Administration was notified in May 1996, that the Debtor had filed a petition pursuant to Chapter 11 of the Bankruptcy Code on March 22, 1996.

Another advance on Medicaid payments was made to the Debtor on August 9, 1996, to correct an inadvertent recoupment on August 1, 1996. The recoupment percentage on this advance is 100%.

The outstanding balance on the December 29, 1996, advance is $2,702.43. The outstanding balance on the January 12, 1996, advance is $12,499.94. The outstanding balance on the August 9, 1996, advance is $15,400.00.

The Indiana Family and Social Services Administration filed a Motion for Authorization for Recoupment on October 4, 1996. The parties agree that there is no dispute as to the facts, and they have submitted briefs in support of their legal positions.

11 U.S.C. § 553 allows a creditor to offset certain mutual debts in a bankruptcy proceeding. In effect, setoff elevates an unsecured claim to secured status, to the extent that the debtor has a mutual, prepetition claim against the creditor. *In re Cooks,* 157 B.R. 385, 388 (Bankr.S.D.Ohio 1993). Mutuality of claims means that the claims are asserted against the same entity in the same capacity; the mutual claims need not arise in the same transaction. Accordingly, the availability of setoff turns on whether the claims of the creditor and the debtor both

arose prepetition or both arose postpetition; a creditor may not set off a prepetition claim against a postpetition obligation. *In re Calstar, Inc.*, 159 B.R. 247 (Bankr.D.Minn.1993).

 Unlike setoff, recoupment does not appear in the Bankruptcy Code. However, the Supreme Court has recently observed that courts have permitted the use of recoupment in bankruptcy cases. *Reiter v. Cooper*, 507 U.S. 258, 113 S.Ct. 1213, 1218, n. 2; 122 L.Ed.2d 604 (1993). Recoupment has some of the characteristics of setoff. Both setoff and recoupment have a common origin and are equitable in nature. Recoupment, however, is more limited in its application. Under the doctrine of recoupment, a defendant can meet a plaintiff's claim with a countervailing claim that arose out of the same transaction as the Plaintiff's claim or cause of action, for the purpose of abatement or reduction of such claim. *In re Klingberg Schools*, 68 B.R. 173, 178 (N.D.Ill.1986), aff'd. 837 F.2d 763 (7th Cir.1988); 4 Collier on Bankruptcy 553.03, at 553–17 (15th ed.1994). There are two limitations on the doctrine of recoupment: First, the claims must arise from a single contract or transaction. *In re American Sunlake Ltd. Partnership*, 109 B.R. 727, 730 (Bankr.W.D.Mich.1989). Second, there must be some type of "overpayment" whether accidentally made or contractually made. *In re Public Service Co. of New Hampshire*, 107 B.R. 441, 445 (Bankr. D.N.H.1989). In this case, the only dispute is whether the Debtor's claim for reimbursement and Indiana Family & Social Services Administrations claim for recoupment arise out of a single integrated transaction.

 The right of recoupment arises within the statutory scheme established by the Medicaid Program. 42 U.S.C. § 1396b(d)(2)(A) specifically provides for adjustments to reflect overpayments or underpayments.

Moreover, there is a contract in this case which expressly provides for repayment of advances or overpayment. In addition, subsequent bulletins and notices sent to the Debtor by the Indiana Family & Social Services Administration or its fiscal agent became a part of that contract. The contract and bulletins provide for the payment of claims and further provide that the Debtor may request advances against claims in process with recoupment at the agreed upon rate from future claim payments. The Court agrees with the conclusion of the Indiana Family & Social Services Administration that "[a]lthough there may be a series of claims, these claims against Medicaid are all covered by the one contract which provides for payment of the claims and recoupment of the advances". *See, In re Visiting Nurse Association*, 121 B.R. 114, 118–19 (Bankr. M.D.Fla.1990).

*In re University Medical Center*, 973 F.2d 1065 (3rd Cir.1992) and *In re Dartmouth House Nursing Home, Inc.*, 24 B.R. 256 (Bankr.D.Mass.1982), which denied recoupment for Medicare or Medicaid overpayments, are distinguishable from this case. *In re University Medical Center* denied recoupment of Medicare overpayments because the court concluded that the annual reimbursement agreements constituted discrete transactions despite the ongoing relationship of the parties and the statutory right to recoupment. *In re Dartmouth House Nursing Home, Inc.* denied recoupment of Medicaid overpayments because the overpayments occurred under separate, yearly provider agreements that had terminated at the time of the filing. In this case, there is a single, continuing provider agreement that is still in effect. *In re Yonkers Hamilton Sanitarium, Inc.*, 34 B.R. 385, 388 (S.D.N.Y.1983).

 Unlike the right of setoff, the right of recoupment is exempt from the operation of the automatic stay of 11 U.S.C. § 362. *In re Visiting Nurse Association, supra*, 121 B.R. at 119–120. *See,* 11 U.S.C. § 362(a)(7). Therefore, the Indiana Family & Social Services Administration is free to recoup a percentage of each advance from postpetition payments.

For the foregoing reasons, the Indiana Family & Social Services Administration's Motion for Authorization for Recoupment is allowed.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to

198

Rule 7052 of the Rules of Bankruptcy Procedure.